# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

CHRISTOPHER SMITH,

|  |  |  |  |
|---|---|---|---|
| | Petitioner, | : | Case No. 1:12-cv-425 |
| - vs - | | | District Judge Timothy S. Black |
| | | | Magistrate Judge Michael R. Merz |
| WARDEN, Toledo Correctional Institution, | | | |
| | | : | |
| | Respondent. | | |

# REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court for decision on the merits. Petitioner has filed the Petition (ECF No. 1), Traverse (ECF No. 30), and Amended Traverse (ECF No. 63); Respondent has filed an Answer/Return of Writ (ECF No. 12) and Supplemental Answers/Returns of Writ (ECF Nos. 25 and 55). The Court heard oral argument which has been transcribed (ECF No. 78) and both parties filed post-argument briefs (ECF Nos. 77, 78).

Smith pleads the following Grounds for Relief:

> **Ground One:** A *Brady* due process violation and a Sixth Amendment violation of Smith's Right to trial by jury and to confront all witnesses occurred when the State failed to disclose the lab notes from the DNA tests conducted prior to trial. The defense DNA expert's testimony at the August 11, 2009 hearing demonstrated the exculpatory nature of the lab notes, which were specifically requested prior to trial yet never disclosed.

> **Supporting Facts:** See Petition, ECF No. 1, Appendix F, PageID 29-36.

> **Ground Two:** The trial court's factual conclusions underlying the

decision to convict Smith and deny his Motion for New Trial materially varied from the State's theory enunciated the Indictment and Bill of Particulars in Violation of Smith's Fifth, Sixth, and Fourteenth Amendment Rights and Article 1 Sections 10 and 14 of the Ohio Constitution.

**Supporting Facts:** See Petition, ECF No. 1, Appendix F, PageID 36-40.

**Ground Three:** The trial court erred in violation of Smith's due process rights by sustaining his conviction against the manifest weight of the evidence, and based on facts not in the record.

**Supporting Facts:** See Petition, ECF No. 1, Appendix F, PageID 40-43.

**Ground Four:** The trial court's biased conduct denied Smith of his Fifth, Sixth, and Fourteenth Amendment rights to due process and a fair trial by an impartial judge.

**Supporting Facts:** See Petition, ECF No. 1, Appendix F, PageID 43-49.

**Ground Five:** In violation of Smith's Fifth and Fourteenth Amendment rights, the trial court used Smith's decision not to testify in his own defense against him by stating that the court could not understand the defense's theory without hearing Smith testify.

**Supporting Facts:** See Petition, ECF No. 1, Appendix F, PageID 49.

**Ground Six:** The trial court violated Smith's Sixth Amendment right to confront all witnesses and evidence against him by interjecting personal knowledge and facts not in the record as a basis to vouch for the State's key eyewitness, render the guilty verdict, and sustain the conviction following Smith's Motion for New Trial and Hearing on same.

**Supporting Facts:** See Petition, ECF No. 1, Appendix F, PageID 49-50.

**Ground Seven:** Appellate counsel rendered ineffective assistance in violation of Smith's Sixth Amendment right by failing to properly raise and exhaust the First, Second, Third, Fifth, and Sixth Grounds for Relief presented in this petition.

**Supporting Facts:**  See Petition, ECF No. 1,  Appendix F, PageID 50.

**Procedural History**

Smith was originally indicted by the Hamilton County Grand Jury in 2007 on one count of aggravated robbery in violation of Ohio Revised Code § 2911.01(A)(1) with specifications (Count 1);  robbery in violation of Ohio Revised Code § 2911.02(A)(2) (Count 2); and having weapons while under disability in violation of Ohio Revised Code § 2923.13(A)(2) (Count 3) (Indictment, Return of Writ, ECF No. 12-1, PageID 159-62).  On the State's motion, the trial court amended the Indictment by adding the word "recklessly" to Count Two. *Id.*  at PageID 165. Smith waived his right to a jury trial. *Id.*  at PageID 192.  Following a bench trial before Judge Robert Ruehlman in 2008, Smith was found guilty as charged and sentenced to twenty-six years imprisonment.  *Id.*  at PageID 193-95.

Following the verdict, Smith moved for a judgment of acquittal under Ohio R. Crim. P. 29 (*Id.* at PageID 196-205) and for a new trial pursuant to Ohio R. Crim. P. 33 (*Id.* at PageID 206-48).  Judge Ruehlman denied both. *Id.*  at 253-54.

Smith appealed raising four assignments of error:

> 1. The trial court erred in repeatedly interjecting and relying on its own personal observations and memories of facts, distances and locations, and in considering inadmissible other acts evidence as substantive proof of guilt, all in violation of the 5th Amendment to the Federal Constitution and Article I, Section 16 of the Ohio Constitution.

> 2. The trial court erred to defendant's prejudice when it entered separate convictions and sentences for both aggravated robbery and robbery from the same incident.

> 3. Defendant was denied the effective Assistance of counsel in violation of the 6th Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution.
>
> 4. The trial court erred to defendant's prejudice when it denied counsel's motions for a verdict of acquittal, and again when it accepted and journalized verdicts of guilty which were not supported by relevant and credible evidence.

(Appellant's Brief, Return of Writ, ECF No. 12-1, PageID 256-75.)  Smith had been represented at trial by Attorney Michele Berry, who represents him in this Court.  On direct appeal, however, he was represented by Attorney Elizabeth Agar. *Id.* at PageID 275.

The First District found that Smith's convictions for aggravated robbery and robbery were for allied offenses of similar import, remanded for re-sentencing on one of those Counts, and otherwise affirmed. *State v. Smith*, Case No. C-090645 (1st Dist. May 5, 2010)(unreported, copy ECF No. 12-1, PageID 298-303.)

On remand, the aggravated robbery and robbery charges were merged and Smith was resentenced to eighteen years imprisonment (Return of Writ, ECF No. 12-1, PageID 304-06). Now represented by Attorney Michaela Stagnaro, Smith again appealed to the First District (Notice of Appeal, ECF No. 12-1, PageID 307) raising two assignments of error:

> 1. The trial court erred as a matter of law by improperly sentencing appellant.
>
> 2. Appellant was denied effective assistance of counsel in violation of his constitutional rights thus prejudicing his right to a fair trial.

The First District again remanded for proper calculation and journalization of jail time credit, but otherwise affirmed. *State v. Smith*, Case No. C-100479 (1st Dist. Mar. 11, 2011)(unreported, copy at ECF No. 12-1, PageID 329-32).

4

On August 3, 2010, now represented by Assistant State Public Defender Craig Jaquith, Smith moved to reopen his appeal under Ohio R. App. P. 26(B), raising the following as assignments of error assertedly omitted as the result of ineffective assistance of appellate counsel:

> 1. Christopher Smith's convictions are against the manifest weight of the evidence.
>
> 2. The trial court abused its discretion when it overruled the new trial motion.
>
> 3. The conduct of the trial court during closing argument was improper, and denied Mr. Smith his right to due process of law guaranteed by the Fifth and Fourteenth Amendments.

(Application, ECF No. 12-1, PageID 334-46.) The First District found Smith had "failed to demonstrate a genuine issue as to whether he has a colorable claim of ineffective assistance of counsel on appeal" and denied the Application. *State v. Smith*, Case No. 090645 (1st Dist. Feb. 7, 2011)(unreported, copy at ECF No. 12-1, PageID 352-54).

Smith moved the First District to certify that its decision on the 26(B) Application conflicted with decisions of the Van Wert and Highland County Courts of Appeals (Motion, ECF No. 12-1, PageID 355-57). The First District summarily denied the Motion (Entry, ECF No. 21-1, PageID 375). Smith then appealed to the Ohio Supreme Court from denial of the 26(B) Application, pleading two propositions of law:

> I. When laboratory notes prepared by the State's DNA analyst contain information that tends to exculpate the defendant, and inculpate a third party, due process requires that the notes be provided to the defense during discovery.
>
> II. A district court of appeals has jurisdiction to review a direct appeal claim of actual judicial bias which is supported by evidence in the record of the trial proceedings.

5

(Memorandum in Support of Jurisdiction, ECF No. 12-1, PageID 380.) The Ohio Supreme Court dismissed the appeal as "not involving any substantial constitutional question. *State v. Smith*, Case No. 2011-0476 (May 25, 2011)(unreported; copy at ECF No. 12-1, PageID 393).

Now again represented by Attorney Michele Berry, Smith filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 (ECF No. 12-1, PageID 394-424). Judge Ruehlman denied the petition (Entry, ECF No. 12-1, PageID 425; Findings of Fact, ECF No. 12-1, PageID 426-28). Smith appealed, raising the following assignments of error:

> 1. The trial court abused its discretion by denying Smith's postconviction petition, which presented constitutional errors impacting Smith's substantial rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and their related counterparts in the Ohio Constitution.

> > Issue Presented for Review: Whether a trial court abuses its discretion when it denied [sic] a post-conviction petition that presents a multitude of constitutional errors that prevented the defendant-petitioner from fully confronting the state's evidence and presenting at trial exonerative DNA evidence against which: (1) conclusively inculpates an alternate suspect; and (2) undermines the evidence against the defendant-petitioner, and thus, renders the verdict unworthy of confidence.

> > > First Ground for Relief: A *Brady* due process violation and a Sixth Amendment violation of Smith's Right to trial by jury and to confront all witnesses occurred when the State failed to disclose the lab notes from the DNA tests conducted prior to trial. The defense DNA expert's testimony at the August 11, 2009 hearing demonstrated the exculpatory nature of the lab notes, which were specifically requested prior to trial yet never disclosed.

> > > Second Ground for Relief: The trial court's factual conclusions underlying the decision to convict Smith and deny his Motion for New Trial materially varied from the State's theory enunciated the Indictment and Bill of Particulars in Violation of

6

Smith's Fifth, Sixth, and Fourteenth Amendment Rights and Article 1 Sections 10 and 14 of the Ohio Constitution.

<u>Third Ground for Relief</u>: The trial court erred in violation of Smith's due process rights by sustaining his conviction against the manifest weight of the evidence, and based on facts not in the record.

<u>Fourth Ground for Relief</u>: The trial court's biased conduct denied Smith of Fifth, Sixth, and Fourteenth Amendment right to due process and a fair trial by an impartial judge.

<u>Fifth Ground for Relief</u>: In violation of Smith's Fifth and Fourteenth Amendment rights, the trial court used Smith's decision not to testify in his own defense against him by stating that the court could not understand the defense's theory without hearing Smith testify.

<u>Sixth Ground for Relief:</u> The trial court violated Smith's Sixth Amendment right to confront all witnesses and evidence against him by interjecting personal knowledge and facts not in the record as a basis to vouch for the State's key eyewitness, render the guilty verdict, and sustain the conviction following Smith's Motion for New Trial and Hearing on the same.

<u>Seventh Ground for Relief:</u> Christopher Smith is entitled to postconviction relief because incarcerating him, an actually innocent person, violates his Eighth Amendment right to equal protection and to be free from cruel and unusual punishment and his Fourteenth Amendment right to due process.

2. Appellate counsel rendered ineffective assistance in violation of Smith's Sixth Amendment right by failing to properly raise and exhaust the First, Second, Third, Fifth, Sixth, and Seventh Grounds for Relief presented in Smith's June 15, 2012 post-conviction petition.

7

> Issue Presented for Review: Whether ineffective assistance of appellate counsel attaches when counsel fails to raise all constitutional errors that rendered defendant's trial fundamentally unfair and which resulted in a verdict unworthy of confidence.
>
> 3. Ohio's procedure for raising delayed claims of ineffective assistance of appellate counsel is unconstitutional as it deprives a defendant of due process and equal protection by embedding meritorious claims for relief in additional layers of deference to the State, effectively precluding a complete merits review of the issues appellate counsel failed to raise.
>
> > Issue Presented for Review: Whether the procedure for raising delayed claims of ineffective assistance of appellate counsel, established in Ohio App. R. 26(B) deprives a defendant of the due process and equal protection by embedding meritorious claims for relief in additional layers of deference to the State, thereby effectively precluding a complete merits review of issues appellate counsel failed to raise.

(Appellant's Brief, ECF No. 25-1, PageID 1699-1701.)  The First District affirmed denial of the post-conviction petition.  *State v. Smith*, Case No. 120491 (1st Dist. Apr. 24, 2013)(unreported, copy at ECF No. 25-1, PageID 1749 et seq.)  Smith appealed, but the Ohio Supreme Court declined to exercise jurisdiction.  *State v. Smith*, 136 Ohio St. 3d 1475 (2013).

While Smith's petition for post-conviction relief was pending, he filed a second Rule 26(B) Application for Reopening raising seven assignments of error assertedly omitted as a result of ineffective assistance of appellate counsel (ECF No. 25-1, PageID 1778-1811).  The First District summarily denied the Application (ECF No. 25-1, PageID 1818).  Smith appealed to the Ohio Supreme Court which again declined to exercise appellate jurisdiction.  *State v. Smith*, 134 Ohio St. 3d 1471 (2013).

Smith's habeas petition had been filed then stayed so he complete his state court proceedings.  On notice that those proceedings were complete, Judge Spiegel reopened the case

(ECF No. 24). Shortly thereafter the reference was transferred to the undersigned.

# Analysis

The facts of the crime in suit are recited as follows by the First District on direct appeal:

> One afternoon, a man wearing a wig and sunglasses entered a Cincinnati Bell Wireless store brandishing a gun. He ordered the patrons to the floor and demanded money from the store manager. The manager opened the cash register, and the gunman fled with the store's till.

> Thomas Moore was driving by the store immediately before the robbery. He saw the man put on the wig and sunglasses and enter the store. With his suspicion aroused, Moore stopped his car and observed the store. He saw the man emerge from the store and get into a blue Ford Expedition. Moore followed the Expedition and saw the man whom he would ultimately identify as Smith sitting in the passenger side of the vehicle. When Moore saw Smith, he was no longer wearing the·disguise.

> Soon after the robbery, police found the Expedition in the vicinity of Smith's residence. Near the vehicle, they found a wig, sunglasses and a black T-shirt. The Expedition's license plate led the police to one of Smith's girlfriends, who testified that she had given the vehicle to Smith.

> On the afternoon of the robbery, Smith, a parolee, cut off his electronic monitoring ankle bracelet and absconded. Cellular telephone records established that he had told another girlfriend to report that the Expedition had been stolen.

> The theory of the defense was that Charles Allen had borrowed the car and had committed the robbery without Smith's participation. Deoxyribonucleic acid (DNA) taken from the wig, sunglasses, and T-shirt revealed a match with Allen's DNA, whereas none of Smith's DNA was discovered. The defense also offered the out-of-court statements of Allen suggesting that Smith had not been involved.

> In rebuttal, the state presented the testimony of Allen, who testified that he had driven Smith from the crime scene in the Expedition.

(ECF No. 12-1, PageID 298-99.)


## Ground One:  Failure to Disclose DNA Lab Notes


In his First Ground for Relief, Smith claims his Fourteenth Amendment due process rights recognized in *Brady v. Maryland*, 373 U.S. 83 (1963), and his Sixth Amendment rights to trial by jury and to confront the witnesses against him were violated by the State's failure to disclose laboratory notes relating to DNA testing.

Prior to trial, the State submitted the wig, sunglasses, and black T-shirt recovered near Smith's residence for DNA testing.  That testing **excluded** Smith as a contributor to any of the recovered DNA, but identified Charles Allen.  Smith's theory is that with the laboratory notes, direct examination of a defense DNA expert and cross-examination of the State's DNA expert would have shown how strongly associated with these three items Allen was, thereby undercutting the State's theory that Allen's DNA arose from his mere touching of the items.


## Procedural Default Defense


The Warden asserts this claim is procedurally defaulted because Smith never presented it to the Ohio Supreme Court on direct appeal (Return, ECF No. 12, PageID 100).

The procedural default defense in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982).  Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.  *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986);  *Engle*, 456 U.S. at 110;  *Wainwright*, 433 U.S. at 87.  *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963).  *Coleman*, 501 U.S. at 724.

"A claim may become procedurally defaulted in two ways." *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013), *quoting Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, a claim is procedurally defaulted where state-court remedies have been exhausted within the meaning of § 2254, but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule. *Id.* Second, a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule. *Id.*

Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright*. *Murray*, 477 U.S. at 485; *Mapes v. Coyle*, 171 F.3d 408, 413

(6th Cir. 1999); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94, 97

(6th Cir.), *cert denied*, 474 U.S. 831 (1985).  Failure to present an issue to the state supreme court

on discretionary review constitutes procedural default.  *O'Sullivan v. Boerckel*, 526 U.S. 838,

848 (1999)(citations omitted).  "Even if the state court failed to reject a claim on a procedural

ground, the petitioner is also in procedural default 'by failing to raise a claim in state court, and

pursue that claim through the state's ordinary appellate procedures.'" *Thompson v. Bell*, 580 F.3d

423, 437 (6th Cir. 2009), *citing Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)(quoting

*O'Sullivan v. Boerckel,* 526 U.S. 838, 846-7(1999)); *see also Deitz v. Money*, 391 F.3d 804, 808

(6th Cir. 2004) ("A federal court is also barred from hearing issues that could have been raised in

the state courts, but were not[.]") The corollary to this rule is that where a petitioner raised a

claim in the state court but in violation of a state's procedural rule, a state court must expressly

reject the claim on that procedural ground for a federal court to deem the claim defaulted. *See*

*Williams*, 460 F.3d at 806 (noting that a state court's expressed rejection of a petitioner's claim on

procedural basis and petitioner's complete failure to raise a claim in state court are the two ways

a claim can be in procedural default).

Smith's response to the procedural default defense interleaves arguments about

exhaustion and procedural default (Traverse, ECF No. 30, PageID 1908-17).  The State has not

raised a lack of exhaustion defense, so the Court pretermits any discussion of exhaustion.

As to procedural default, Smith asserts all of his "claims are properly before this Court

because Smith pursued his state remedies within the procedures available to present his

ineffective assistance of appellate counsel claims, which consume[1] the underlying substantive

claims." (Traverse, ECF No. 30, PageID 1910.)  This response is unavailing for two independent

---

[1] The meaning of the word "consume" in this context makes no sense to the Court.  The Court will assume that
counsel instead intended the word "subsume."

reasons.

First of all, even a properly filed Application to Reopen does not preserve the underlying assignments of error for federal habeas review. An Ohio App. Rule 26(B) application preserves for habeas review only the ineffective assistance of appellate counsel claims, not the underlying substantive claims. *Wogenstahl v. Mitchell*, 668 F.3d 307, 338 (6th Cir. 2012), *citing Lott v. Coyle*, 261 F.3d 594, 612 (6th Cir. 2001). "The *Lott* court explained that permitting an Ohio prisoner to raise a substantive claim in a Rule 26(B) motion "would eviscerate the continued vitality of the procedural default rule; every procedural default could be avoided, and federal court merits review guaranteed, by claims that every act giving rise to every procedural default was the result of constitutionally ineffective counsel." *Id*.

Secondly, Smith's second "Delayed Application to Reopen" was entirely improper under Ohio law and did not preserve even the ineffective assistance of appellate counsel claims made in it for review, much less the underlying substantive assignments of error. Ohio allows an individual defendant only one 26(B) application. Ohio App. R. 26(B) makes no provision for successive applications. *State v. Richardson*, 74 Ohio St. 3d 235 (1996). Indeed, "there is no right to file successive applications for reopening" under App. R. 26(B). *State v. Twyford*, 106 Ohio St. 3d 176 (2005), *quoting State v. Williams*, 99 Ohio St. 3d 179, ¶ 12. Once the issue of ineffective assistance has been raised and adjudicated, res judicata bars its relitigation. *State v. Cheren*, 73 Ohio St. 3d 137 (1995), following *State v. Perry*, 10 Ohio St. 2d 175 (1967).

Smith confuses this issue by asserting there are two "types" of applications for reopening a direct appeal, one filed within ninety days from judgment and one – the "delayed" type – filed later. Not so. Ohio has one "type" of 26(B) application which must be filed within ninety days of judgment. The ninety day deadline can be excused upon a showing of good cause for the

delay. But it is by no means automatic and failure to file within ninety days constitutes a procedural default which the Sixth Circuit has recognized as an adequate and independent ground of state court decision. *Parker v. Bagley*, 543 F.3d 859 (6th Cir. 2008); *Scuba v Brigano*, 527 F.3d 479, 488 (6th Cir. 2007)(distinguishing holding in capital cases); *Monzo v. Edwards*, 281 F.3d 568 (6th Cir. 2002); *Tolliver v. Sheets*, 594 F.3d 900 (6th Cir. 2010), *citing Rideau v. Russell*, 342 Fed. App'x. 998, 2009 WL 2586439 (6th Cir. 2009).

Smith argues this Court must treat the First District's summary denial of the second 26(B) application as a decision on the merits (Traverse, ECF No. 30, PageID 1913, citing *Harrington v. Richter*, 562 U.S. 86 (2011)). But even Smith's quotation from *Harrington* belies that conclusion. The Supreme Court said, as Smith quotes it, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." 562 U.S. at 99. But here there are two state-law procedural principles which fully explain the summary dismissal – Ohio's disallowance of multiple 26(B) applications and the delay in filing without a sufficient showing of good cause.

As an alternative excuse for procedural default of his ineffective assistance of appellate counsel claims, Smith relies on *Martinez v. Ryan*, 566 U.S. ___, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012), where the Supreme Court held:

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To overcome

14

> the default, a prisoner must also demonstrate that the underlying
> ineffective-assistance-of-trial-counsel claim is a substantial one,
> which is to say that the prisoner must demonstrate that the claim
> has some merit. Cf. *Miller-El v. Cockrell*, 537 U. S. 322, 123 S. Ct.
> 1029, 154 L. Ed. 2d 931 (2003) (describing standards for
> certificates of appealability to issue).

132 S. Ct. at 1318-1319. In *Trevino v. Thaler*, ___ U.S. ___, 133 S. Ct. 1911, 185 L. Ed. 2d 1044 (2013), the Court extended *Martinez* to the Texas system. However, the Sixth Circuit has avoided deciding whether *Martinez* and *Trevino* apply to the Ohio system for litigating ineffective assistance of trial counsel claims. *McGuire v. Warden*, 738 F.3d 741, 751-52 (6th Cir. 2013); *Henness v. Bagley*, 766 F.3d 550 (6th Cir. 2014); *Williams v. Mitchell*, 792 F.3d 606 (6th Cir. 2015); *Landrum v. Anderson*, 813 F.3d 330, 336 (6th Cir. 2016). Even if those cases do apply to the Ohio system, they are available only to raise ineffective assistance of trial counsel claims, not ineffective assistance of appellate counsel claims. *See also Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013) (holding *Martinez* does not permit ineffective assistance of counsel on post-conviction to excuse default on a claim of ineffective assistance of appellate counsel.)

Finally, Smith claims his actual innocence[2] excuses his procedural default of Ground One (Traverse, ECF No. 30, PageID 1943-45). He refers to the "post-trial DNA discovery" as the new evidence on which he relies. *Id.*

The Supreme Court's most recent decision of the actual innocence gateway appears in *McQuiggin v. Perkins*, 569 U.S. ___, 133 S. Ct. 1924, 185 L. Ed. 2d 1019 (2013).

> [A]ctual innocence, if proved, serves as a gateway through which a
> petitioner may pass whether the impediment is a procedural bar, as

---

[2] Smith alternates between referring to the *Schlup* "gateway" as creating either one exception to procedural default or two, actual innocence and miscarriage of justice. See, e.g., PageID 1943 ("exceptions" but also on the same page "exception"; "*Schlup* actual innocence gateway and/or the miscarriage of justice exception.") The "miscarriage of justice" standard, which is sometimes used synonymously with "actual innocence," requires some showing of actual innocence. In other words, they are the same standard, not alternative ways of avoiding a procedural default. *Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Calderon v. Thompson*, 523 U.S. 538 (1998).

> it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U. S., at 329, 115 S. Ct. 851, 130 L. Ed. 2d 808; see *House*, 547 U. S., at 538, 126 S. Ct. 2064, 165 L. Ed. 2d. 1 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U. S., at 332, 115 S. Ct. 851, 130 L. Ed. 2d. 808.

*Id.* at 1928.

The Supreme Court in *Schlup* described the quality of the evidence required:  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *see also Souter v. Jones,* 395 F.3d 577, 590 (6th Cir. 2005).

In the section of the Traverse dealing with *Schlup*, counsel refers the Court to her "Complete Statement of Facts" for a description of the new evidence (Traverse, ECF No. 30, PageID 1943).  The Complete Statement portion appears at PageID 1863-1900.  That thirty-seven page statement presents Smith's theory of the facts, interweaving factual conclusions supported by post-trial evidence with evidence from the trial.  The only places where new evidence[3] is referenced are:

PageID 1869 where the lab notes from the county DNA testing and the new DNA

test results on the sunglasses are mentioned.

---

[3]  "New evidence" for *Schlup* purposes is merely evidence not presented at trial, regardless of when it was discovered.  Although there is a circuit split on the question, the Sixth Circuit has at least suggested that "newly presented" is the proper test.  *Cleveland v. Bradshaw*, 693 F.3d 626, 633 (6th Cir. 2012), citing *Souter v. Jones*, 395 F.3d 577, 596 n. 9 (6th Cir. 2005); *Ogle v. Mohr,* 2016 U.S. Dist. LEXIS 89701 (S.D. Ohio 2016)(Sargus, Ch. J.)

PageID 1870 recounting the post-trial testimony of defense DNA expert Julie

Heinig

There is an entire volume of post-trial testimony about the cash drawer from Cincinnati

Bell and whether it was tested for fingerprints and DNA (ECF No. 12-10, PageID 1464-1503).

Evidence about the cash drawer is not offered to show actual innocence. Rather, the testimony

of Dr. Heinig and the exhibits relevant to her testimony are at Volume X of the transcript (ECF

No. 12-11, PageID 1523, et seq.)

The new evidence presented[4] does not persuade this Court that no rational juror would

have convicted Smith had the new evidence been presented with the evidence actually heard at

trial. Already at trial, Smith had been excluded as a contributor of DNA on the wig and T-shirt

and Charles Allen identified as a contributor. The new evidence from Dr. Heinig, interpreting

the lab notes, more strongly identifies Allen as a contributor. Allen was a trial witness for the

State who denied any contact with the wig. The notion that a somewhat firmer scientific basis

for identifying Allen with the disguise would have shifted the balance enough for an acquittal is

speculative. A rational juror would have heard scientific proof that Allen's DNA was on the wig

and Smith's was not. While the additional scientific evidence is perhaps not technically

cumulative, it is unlikely to have persuaded a rational juror to have changed his or her verdict.[5]

In her Complete Statement of Facts, Smith's counsel argues the new evidence interwoven

with her interpretation of the trial evidence. This is completely appropriate because a habeas

---

[4] The Court asked the parties to brief the question of whether Smith's failure to testify in this proceeding in support of his claim of actual innocence could be used against him. The post-argument briefs do not answer this question to the Court's satisfaction. However, Smith's silence on the *Schlup* issue has not been considered by the Court in any way.
[5] We know that the new evidence did not persuade the actual trier of fact, Judge Ruehlman, that Smith was innocent, but the test under *Schlup* is based on a hypothetical rational juror, not a judge as trier of fact.

court considering a *Schlup* claim, is to weigh all the evidence together in arriving at its conclusion. However, the Court is not bound to accept a petitioner's counsel's characterizations of the evidence. For example, counsel says the vehicle used in the crime could be "indirectly traced" to Smith (Traverse, ECF No. 30, PageID 1867). The actual trial testimony from the registered owner of the car, indisputably one of Smith's girlfriends, is that "she frequently allowed Smith to use the Expedition for extended periods of time." *Id.*

Smith has not established an actual innocence excuse for his procedural default of Ground One which should therefore be dismissed with prejudice.

**Ground Two: Variance Between Trial Judge's Findings and the State's Theory of the Case**

In his Second Ground for Relief, Smith argues that the "factual conclusions underlying the judge's decision to convict Smith and deny his Motion for New Trial fatally varied from the theory enunciated in the State's Indictment and Bill of Particulars." Smith contends this variance

> violated Smith's Fifth, Sixth, and Fourteenth Amendment rights to due process, to fully confront the State's witnesses and evidence, to full notice of the charges against him, to present a complete defense, and to a fair trial wherein a conviction will result only from proof beyond a reasonable doubt of the charges set forth in the Indictment and particularized in the Bill of Particulars.

(Petition, ECF No. 1-1, Appendix F, PageID 36.)

As evidence of Judge Ruehlman's "factual conclusions," Smith adverts to the judge's comments at the new trial hearing which are transcribed at ECF No. 12-11, PageID 1580, et seq. This Court would note that these comments do not constitute "findings." Indeed, Judge Ruehlman said he would not decide the new trial motion that day, but would look at what Smith had submitted "and then make a decision." Ultimately, as noted above, he entered a summary

denial of the motion for new trial without any opinion or findings of fact (ECF No. 12-1, PageID 254).

Respondent asserts merits consideration of Ground Two is barred by the same procedural default which bars Ground One.  Petitioner responds in part with the same asserted exceptions to procedural default as are argued with respect to Ground One (Traverse, ECF No. 30, PageID 1908-35).  They are unavailing for the same reasons set forth with respect to Ground One.

Separately from the arguments as to Ground One, Smith argues Ground Two is "properly before this Court pursuant to the 'unavoidably prevented' vehicle of [Ohio Revised Code] § 2953.21."[6] (Traverse, ECF No. 30, PageID 1935.)

Smith, through present counsel, filed his post-conviction petition on June 15, 2012 (ECF No. 12-1, PageID 424).  Judge Ruehlman in dismissing the petition found that claims one through seven "are based on matters in the existing record, could have been raised at trial, and most of which have been raised on appeal.  These claims are therefore barred by res judicata." (ECF No. 12-1, PageID 427, citing *State v. Cole*, 2 Ohio St. 3d 112 (1982), and *State v. Perry*, 10 Ohio St. 2d 175 (1967)).  He also found the eighth claim for relief for ineffective assistance of appellate counsel was "not a matter properly before this Court." *Id.*, *citing State v. Murnahan*, 63 Ohio St. 3d 60 (1992), and *State v. Davis*, 119 Ohio St. 3d 422 (2008).  He says nothing about the timeliness of the petition.

On appeal, however, the First District concluded

> But most significant, and dispositive here, is the fact that Smith failed to satisfy either the time restrictions of R.C. 2953.21(A)(2) or the jurisdictional requirements of R.C. 2953.23. Therefore, the postconviction statutes did not confer upon the common pleas court jurisdiction to entertain Smith's petition on the merits.  See R.C. 2953.23(A).

---

[6] The "unavoidably prevented" language does not appear in Ohio Revised Code "§ 2953.21(b)" as asserted by counsel.  Indeed. no such statute exists.  Instead, the language is found in Ohio Revised Code § 2953.23(A)(1)(a).

Smith's asserts this ruling was plain error because he "met the timing and jurisdictional elements of Ohio Revised Code § 2953.21." (Traverse, ECF No. 30, PageID 1935.) Despite that confident assertion, Smith's counsel cites no Ohio law for the propositions that (1) when a petitioner is "unavoidably prevented" from filing a post-conviction petition on time, he can still raise claims barred by Ohio's criminal res judicata doctrine or (2) that a post-conviction petitioner can ever raise ineffective assistance of appellate counsel claims in a 2953.21 petition. On the latter point, *Murnahan*, cited by Judge Ruehlman, is directly in point.

Smith makes at several points the assertion that ineffective assistance of appellate counsel will excuse a procedural default, e.g., Traverse, ECF No. 30, PageID 1939. But the Supreme Court has held that ineffective assistance of appellate counsel will only excuse a procedural default if the ineffective assistance of appellate counsel claim is not itself procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446 (2000). All of the claims of ineffective assistance of appellate counsel made in the Delayed 26(B) Application are procedurally defaulted by Smith's failure to include them in his first 26(B) Application.

Ground Two is therefore procedurally defaulted and should be dismissed with prejudice.

**Ground Three: Manifest Weight of the Evidence**

In his Third Ground for Relief, Smith asserts his convictions are against the manifest weight of the evidence. Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1 (2010); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982); *Barclay v. Florida*, 463 U.S. 939 (1983). A weight of the evidence claim is not a federal constitutional claim. *Johnson v.*

*Havener*, 534 F.2d 1232 (6th Cir. 1986).  Smith's Third Ground for Relief is therefore not cognizable in these proceedings and should be dismissed on that basis.


**Ground Four:  Judge Ruehlman's Biased Conduct**


In his Fourth Ground for Relief, Smith argues Judge Ruehlman was biased against him and this denied him his constitutional rights to due process and a fair trial.

Ground Four is procedurally defaulted on the same basis as Grounds One and Two and should be dismissed with prejudice on that basis.


**Ground Five:  Violation of Smith's Privilege Against Self-Incrimination**


In his Fifth Ground for Relief, Smith claims Judge Ruehlman used his decision not to testify against him in violation of his privilege against self-incrimination when the judge said he could not understand the defense theory without hearing Smith testify.

Ground Five is procedurally defaulted on the same basis as Grounds One, Two, and Four and should be dismissed with prejudice on that basis.


**Ground Six:  Violation of Confrontation Right**


In his Sixth Ground for Relief, Smith claims Judge Ruehlman violated his rights under the Confrontation Clause by interjecting personal knowledge and facts not supported by evidence in the record to make and then sustain his verdict.

Ground Six is procedurally defaulted on the same basis as Grounds One, Two, Four, and Five and should be dismissed on that basis.


**Ground Seven:  Ineffective Assistance of Appellate Counsel**


In his Seventh Ground for Relief, Smith asserts he received constitutionally ineffective assistance of appellate counsel when his appellate attorneys failed to properly raise the constitutional claims he makes in Grounds One, Two, Three, Five, and Six (Petition, ECF No. 1, Appendix F, PageID 50).

Respondent argues that Ground Seven is in part procedurally defaulted because Smith only included three omitted assignments of error in his Application to Reopen, not including habeas Grounds Two, Five, and Six (Return, ECF No. 12, PageID 110).  Of the claims presented to the court of appeals, only Ground One and a claim that Judge Ruehlman was biased were carried forward in the appeal to the Ohio Supreme Court, such that only a claim of ineffective assistance of appellate counsel for failure to present Ground One is preserved for merit review in this Court.  *Id.*  at PageID 112.

In the Traverse Smith makes no response to the claim that most of his ineffective assistance of appellate counsel are procedurally defaulted by failure to bring them to the Ohio Supreme Court, instead arguing about the efficacy of presenting them in the Delayed 26(B) Application or the Petition for Post-Conviction Relief.  Because Ohio law requires ineffective assistance of appellate counsel claims to be brought in a petitioner's first and only application for reopening the direct appeal, the Court finds all of Ground Seven is procedurally defaulted except the claim that appellate counsel was ineffective for failing to present Ground One.

The preserved ineffective assistance of appellate counsel claim was decided on the merits

by the First District as follows:

> In his application, Smith challenges his appellate counsel's effectiveness in advancing his assignment of error challenging the balance struck by the trial court in weighing the evidence adduced in support of his convictions. Counsel, he insists, should have brought to this court's attention allegedly self-incriminating out-of-court statements made by the state's rebuttal witness during surreptitiously recorded conversations with Smith and Smith's brother. But, as Smith acknowledges, these statements were a featured part of the defense's case. And this court's mandate in addressing a weight-of-the-evidence challenge includes review[ing] the entire record [footnote omitted]. In the absence of some demonstration that appellate counsel's omission somehow caused this court to neglect its mandate to "review the entire record," we cannot say that counsel performed deficiently in arguing Smith's weight-of-the-evidence challenge.
>
> Smith also asserts that appellate counsel was ineffective in failing to assign as error the overruling of his Crim.R. 33 motion for a new trial. But to the extent that his new-trial motion was based on newly discovered evidence, the trial court cannot be said to have abused its discretion in overruling it, [footnote omitted] because the record does not disclose a strong probability that the newly discovered evidence would have changed the outcome if a new trial had been granted. [footnote omitted] Nor did the court abuse its discretion in denying a new trial on the ground of prosecutorial misconduct in failing to disclose to the defense the lab notes underlying the county's DNA-test results. [footnote omitted] Nondisclosure of the lab notes did not violate rights secured to Smith by the Due Process Clause of the Fourteenth Amendment,[footnote omitted] because the undisclosed evidence was not "material" in that it could not "reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict(s)." [footnote omitted] And nondisclosure did not deny Smith his Sixth Amendment right to confront the witnesses against him, because the county crime-lab serologist who had generated the DNA-test report testified at trial. [footnote omitted] Thus, because the proposed assignment of error would not have presented a reasonable probability of success if it had been advanced on appeal, we cannot say that appellate counsel was ineffective in failing to submit it.

*State v. Smith,* Case No. C-090645 (1st Dist. Feb. 7, 2011)(unreported; copy at ECF No. 12-1,

PageID 352-54.)

Because this decision from the First District is the last explained decision from the Ohio courts, it is the decision this Court reviews, rather than the unexplained denial of consideration on appeal by the Ohio Supreme Court. *Ylst v. Nunnemaker*, 501 U.S. 797 (1991).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton*, 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000).

A criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial, counsel who acts as an advocate rather than merely as a friend of the court. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The *Strickland v. Washington* effective assistance of counsel test applies as well to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987).

To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing  Wilson v. Parker*, 515 F.3d 682, 707 (6th  Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id*., *citing Wilson.*  If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the

failure to raise it amounted to ineffective assistance of appellate counsel. *Id., citing Wilson.* The attorney need not advance every argument, regardless of merit, urged by the appellant.  *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.") Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003); *Williams v. Bagley*, 380 F.3d 932, 971 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005); *see Smith v. Murray*, 477 U.S. 527 (1986).  However, failure to raise an issue can amount to ineffective assistance.  *McFarland v. Yukins*, 356 F.3d 688 (6th Cir. 2004), *citing Joshua*, 341 F.3d at 441;  *Lucas v. O'Dea*, 179 F.3d 412, 419 (6th Cir. 1999); and *Mapes v. Coyle,* 171 F.3d 408, 427-29 (6th Cir. 1999).

The First District applied the *Strickland v. Washington* test, as required by *Smith* and *Burger, supra*.  It found the omitted assignments of error would not have changed the result of the appeal if they had been raised.  This Court concludes the First District's decision was not an objectively unreasonable application of *Strickland*.  Smith's claim in his Application for Reopening was not that the manifest evidence assignment of error was not raised, but that appellate counsel provided ineffective assistance by not arguing certain evidence related to Charles Allen's rebuttal testimony (See Application, ECF No. 12-1, PageID 335-36).  Smith's *Brady* claim about the DNA lab notes is not particularly persuasive for reasons given above:  the DNA from the wig and the T-shirt excluded Smith and included Allen; the lab notes might have made it possible to strengthen that conclusion, but not enough to make a difference in the verdict.

Because the First District's decision of Smith's ineffective assistance of appellate counsel claims is neither contrary to nor an objectively unreasonable application of *Strickland*, it is

entitled to deference by this Court under 28 U.S.C. § 2254(d)(1).  Therefore Smith's Seventh

Ground for Relief should be dismissed with prejudice on the merits.


**Conclusion**


Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the

Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this

conclusion, Petitioner should be denied a certificate of appealability and the Court should certify

to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be

permitted to proceed *in forma pauperis*.


August 29, 2016.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**


Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the
proposed findings and recommendations within fourteen days after being served with this Report
and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen
days because this Report is being served by one of the methods of service listed in Fed. R. Civ.
P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected
to and shall be accompanied by a memorandum of law in support of the objections. If the Report
and Recommendations are based in whole or in part upon matters occurring of record at an oral
hearing, the objecting party shall promptly arrange for the transcription of the record, or such
portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the
assigned District Judge otherwise directs. A party may respond to another party's objections
within fourteen days after being served with a copy thereof.  Failure to make objections in
accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638
F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).