# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

CHRISTOPHER SMITH,

                Petitioner,      :      Case No. 1:12-cv-425

    - vs -                            District Judge Timothy S. Black
                                        Magistrate Judge Michael R. Merz

WARDEN, Toledo Correctional
  Institution,

                                    :
                Respondent.

# REPORT AND RECOMMENDATIONS ON REMAND

This habeas corpus case is before the Court on remand from the United States Court of Appeals for the Sixth Circuit. In an unpublished opinion, that court affirmed in part and reversed in part this Court's dismissal of Smith's Petition. *Smith v. Warden*, *Toledo Corr. Inst.,* ___ F. App'x ___, 2019 U.S. App. LEXIS 18196 (6th Cir. Jun. 18, 2019). This Court had denied relief on all six of Petitioner's claims. *Smith v. Warden*, 2017 U.S. Dist, LEXIS 17883 (S.D. Ohio Feb. 8, 2017) (Black, J.). The circuit court reversed our conclusion that Smith's claim under *Brady v. Maryland*, 373 U.S. 83 (1963), was barred by Smith's procedural default in presenting it to the state courts, concluding instead that the default was excused by ineffective assistance of appellate counsel. 2019 U.S. App. LEXIS 18196 at *51-52. The court remanded for our consideration of the merits of the *Brady* claim and Smith's seventh ground for relief, a freestanding ineffective assistance of appellate counsel claim. The remand was effective as of the issuance of the circuit court's mandate, which was received on July 10, 2019 (ECF No. 100). Thus, jurisdiction of the case has now been returned to this Court.

1

District Judge Black, to whom this case is assigned, has confirmed that it remains referred to the undersigned. Since the remanded issues are post-judgment, the reference is governed by 28 U.S.C. § 636(b)(3), requiring a report and recommendations.

Once this Court received the circuit court's mandate (ECF No. 100), it ordered the parties to brief the remanded issues (ECF No. 101). In doing so, the Magistrate Judge noted:

> The Sixth Circuit declined to reach the merits of Petitioner's *Brady* claim because "the merits issue was neither fully briefed nor addressed below." *Smith*, 2019 U.S. App. LEXIS 18196 at *47. On remand we are "first required to determine whether this claim was 'adjudicated on the merits in [s]tate court proceedings. 28 U.S.C. § 2254(d). If it was, the district court must review the adjudication of this claim under the deferential standard required by AEDPA. *See id*.."

*Id.* at PageID 3192, quoting *Smith*, 2019 U.S. App. LEXIS 18196 at *47-48. The requested briefing has been filed (ECF Nos. 102, 103, 113, 114) and Petitioner has filed, upon leave granted over Respondent's Objection, a Reply Brief (ECF No. 110). The remanded issues are therefore ripe for decision.

# Analysis

**Prior Course of these Habeas Proceedings**

The Magistrate Judge's initial Report and Recommendations was based on the pleadings, the State Court Record, oral argument, and post-argument briefing (Report, ECF No. 80, PageID 2984). Among the pleaded grounds for relief were two that are at issue on remand:

> **Ground One:** A *Brady* due process violation and a Sixth Amendment violation of Smith's Right to trial by jury and to confront all witnesses occurred when the State failed to disclose

> the lab notes from the DNA tests conducted prior to trial. The
> defense DNA expert's testimony at the August 11, 2009[,] hearing
> demonstrated the exculpatory nature of the lab notes, which were
> specifically requested prior to trial yet never disclosed.
>
> **Ground Seven:** Appellate counsel rendered ineffective assistance
> in violation of Smith's Sixth Amendment right by failing to
> properly raise and exhaust the First, Second, Third, Fifth, and Sixth
> Grounds for Relief presented in this petition.

(Report, ECF No. 80, at PageID 2984, 2985, quoting Petition, ECF No. 1-1, PageID 29-36, 50).

The Warden had defended Ground One by claiming it was procedurally defaulted "because Smith never presented it to the Ohio Supreme Court on direct appeal." (Report, ECF No. 80, PageID 2993, citing Return of Writ, ECF No. 12, PageID 100: "Smith never presented any of his assignments of error in the state Court of Appeals to the Ohio Supreme Court.")

In the Report and Recommendations, the Magistrate Judge found Smith's response to this defense unavailing[1] and recommended Ground One be dismissed with prejudice as procedurally defaulted (Report, ECF No. 80, PageID 3001). District Judge Black adopted the Report (ECF No. 85) and later issued a certificate of appealability as to Ground One:

> The Court grants a certificate of appealability on Petitioner's first
> ground for relief because reasonable jurists could find it debatable
> whether the Petition states a valid claim for violation of
> Petitioner's Sixth and Fourteenth Amendment rights as well as
> whether this Court's procedural ruling was correct;

(Order Granting Motion to Clarify, ECF No. 93, PageID 3118). On Respondent's Motion to Alter Judgment (ECF No. 94), Judge Black amended the certificate of appealability on Ground One to read:

> Accordingly, the Court GRANTS a certificate of appealability on
> Petitioner's First Ground for Relief as to whether the Court was

---

[1] Counsel had argued all grounds for relief were preserved by being included as underlying assignments of error in applications to reopen the appeal; that the Second District Court of Appeals had decided the *Brady* claim on the merits and not on procedural grounds and thus not enforced any procedural default, and because he claimed to be actually innocent.

3

> correct in finding a procedural default, whether the Court was correct in finding no excuse to the procedural default exists, and whether the Court was correct in not considering the merits of this claim.

(Order, ECF No. 98, PageID 3148). This is the certificate on which the Sixth Circuit acted. *Smith*, 2019 U.S. App. LEXIS 18196, *47 n.4. Because it had never expanded the certificate itself to include the merits of the *Brady* claim, the circuit court did not formally decide the merits. Instead, it remanded

> Smith's *Brady* claim to the district court to consider on the merits. In so doing, the district court is first required to determine whether this claim was "adjudicated on the merits in [s]tate court proceedings." 28 U.S.C. § 2254(d). If it was, the district court must review the adjudication of this claim under the deferential standard required by AEDPA.[2] *See id.*

*Id.* at *47-48. The circuit court also remanded Smith's freestanding ineffective assistance of appellate counsel for failing to raise the *Brady* claim on direct appeal, with the caveat that this "claim is subject to AEDPA deference." *Id.* at *50.

In obedience to the mandate, this Report considers these three issues in turn.

**1.    Did the Ohio First District Court of Appeals decide the *Brady* claim on the merits?**

Petitioner asserts the state courts did not decide his *Brady* claim on the merits (Brief Answering Questions on Remand, ECF No. 102, PageID 3193-99). In response to this position, the Warden quotes the First District Court of Appeals' decision on Smith's first application to reopen the direct appeal under Ohio R. App. P. 26(B):

> Smith also asserts appellate counsel was ineffective in failing to assign as error the overruling of his Crim. R. 33 motion for a new trial. But to the extent that his new-trial motion was based on

---
[2] The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214.

4

> newly discovered evidence, the trial court cannot be said to have abused its discretion in overruling it, because the record does not disclose a strong probability that the newly discovered evidence would have changed the outcome if a new trial had been granted. Nor did the court abuse its discretion in denying a new trial on the ground of prosecutorial misconduct in failing to disclose to the defense the lab notes underlying the county's DNA-test results. Nondisclosure of the lab notes did not violate rights secured to Smith by the Due Process Clause of the Fourteenth Amendment, because the undisclosed evidence was not "material" in that it could not "reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict[s]." And nondisclosure did not deny Smith his Sixth Amendment right to confront the witnesses against him, because the county crime-lab serologist who had generated the DNA-test report testified at trial. Thus, because the proposed assignment of error would not have presented a reasonable probability of success if it had been advanced on appeal, we cannot say that appellate counsel was ineffective in failing to submit it.

(Response on Remand, ECF No. 103, PageID 3225-26, quoting *State v. Smith*, 1st Dist. Hamilton No. C-090645 (Feb. 7, 2011) (unreported; copy at State Court Record, ECF No. 75, PageID 2634-35.)

In reaching this conclusion, the First District was not deciding Smith's *Brady* claim on the merits, but rather the merits of his claim of ineffective assistance of appellate counsel for failing to raise a *Brady* claim on direct appeal. Of necessity the First District had to consider, as a threshold matter, the merits of the underlying *Brady* claim, because it cannot be ineffective assistance of appellate counsel to fail to raise a claim that would have had no merit in any event. But it is well understood in Ohio law that raising a claim of ineffective assistance of appellate counsel does not bring the underlying claim before the court of appeals on the merits. An Ohio App.R. 26(B) application "preserves for habeas review only the [ineffective assistance of appellate counsel] arguments, not the underlying substantive arguments." *Wogenstahl v. Mitchell*, 668 F.3d 307, 338 (6th Cir. 2012), citing *Lott v. Coyle*, 261 F.3d 594, 612 (6th Cir.

2001). To reach the merits of the underlying claim, the appellate court would first have to vacate its prior decision and require inclusion of the new claim in the reopened appeal. It did not do so, so the merits of the *Brady* claim were not formally decided by the First District.

2.   **Is Smith's *Brady* Claim Meritorious?**

The State has a duty to produce exculpatory evidence in a criminal case. If the State withholds evidence and it is material, the conviction must be reversed. *Brady v. Maryland*, 373 U.S. 83 (1963). To achieve this goal, "*Brady* held 'the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *Kyles v. Whitley*, 514 U.S. 419, 432 (1995), quoting *Brady*, 373 U.S. at 87.

"There are three components of a true *Brady* violation: [(1) t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [(2)] that evidence must have been suppressed by the State, either willfully or inadvertently; and [(3)] prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Petitioner argues that the Sixth Circuit

> expressly and unambiguously found that: (1) the suppressed lab notes undermine confidence in the outcome of Smith's trial, Opinion; Doc. 32-2[3] at 30; (2) there is a "reasonable probability of acquittal" if the suppressed evidence had been disclosed, Opinion; Doc. 32-2 at 31; (3) the Brady claim before the state courts was

---

[3] Counsel's references to the Sixth Circuit opinion as it appears on that court's docket is puzzling at best. As noted above, the opinion is publicly reported at 2019 U.S. App. LEXIS 18196, but also at 2019 WL 2518311. Furthermore, the opinion is filed in this Court's record at ECF No. 99. Why then make a reader who is checking citations go to the Sixth Circuit's intranet site? That citation practice is not recommended by any authority on legal citation of which this Court is aware.

6

> both "significant and obvious," Opinion; Doc. 32-2 at 26; and (4) the suppressed evidence "directly undermines" the factfinder's theory of guilt. Opinion; Doc. 32-2 at 29.

(Brief, ECF No. 102, PageID 3199.) Despite the awkwardness of the citations, the Sixth Circuit did make the findings Petitioner summarizes. Smith argues these findings constitute the law of the case and are therefore binding on this Court. *Id.* at PageID 3201, citing *Edmonds v. Smith*, 922 F.3d 737, 739 (6th Cir. 2019); *Scott v. Churchill*, 377 F.3d 565, 569-70 (6th Cir. 2004); *United States v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990); 15 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. §3867 (4th ed.).

Respondent disagrees, asserting that "[i]f the law of the case were so clear, there would not be a remand."

> If the writ should issue, the Sixth Circuit would have issued it. Smith's argument implies that the Sixth Circuit was simply unwilling to pull the trigger and delegated that unseemly task to the district court to do in its place.

(Warden's Brief, ECF No. 103, PageID 3227-28).

The Sixth Circuit gave its reason for not deciding the *Brady* claim on the merits itself: Judge Black's certificate of appealability did not encompass that issue and the circuit court had not expanded the certificate to include that issue. *Smith,* 2019 U.S. App. LEXIS 18196, *47. The court was, in this Court's reading, merely being careful of its jurisdiction, as a circuit court has appellate jurisdiction only over issues specified in a certificate of appealability. 28 U.S.C. § 2253. Federal courts must be especially careful not to exceed their jurisdiction to the point of noting lack of jurisdiction *sua sponte. Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 152 (1908).

Although the Sixth Circuit formally returned the *Brady* claim to this Court for decision, it

made a number of specific findings on issues that underlie the *Brady* claim. In concluding that appellate counsel's performance was objectively unreasonable, it found "[t]he *Brady* claim was both significant and obvious." *Smith*, 2019 U.S. App. LEXIS 18196, *39. As to materiality it noted: "even the trial judge admitted that a jury might find the suppressed lab notes persuasive." *Id.* at *39-40. On the prejudice prong of the *Strickland* analysis, it noted that the standard for establishing a *Brady* claim is "relatively lax," requiring only proof that the government's suppression of evidence "'undermines confidence in the outcome of the trial." *Id.* at *42, quoting *Kyles*, 514 U.S. at 434; *United States v. Bagley*, 473 U.S. 667, 678 (1985). It noted that the materiality test does not depend on the idiosyncrasies of the particular factfinder in the case and suggested the trial judge may have misconstrued *Brady* in denying the motion for new trial when he appeared to make the decision turn on the fact that the case was tried to him, sitting as the finder of fact, rather than to a jury. *Id.* at *43-44.

The circuit court then determined "there was a reasonable probability of a different outcome had the lab notes been disclosed to the defense" and then provided its rationale for how the evidence might have been viewed. *Smith*, 2019 U.S. App. LEXIS 18196, *44-46. Assessing the evidentiary value of the lab notes against the record as a whole, which *Brady* requires, it concluded:

> In a case with stronger evidence, the suppressed evidence might not be enough to create a reasonable probability of a different outcome. But, here, it is sufficient to "undermine[] confidence in the outcome of the trial." *Kyles*, 514 U.S. at 434 (quoting *Bagley*, 473 U.S. at 678). If a reasonable factfinder knew that Allen's DNA was present at almost every locus tested on the wig, while Smith's DNA was not detected, there would be a reasonable probability of acquittal.

*Id.* at *46-47. Thus, the circuit court, without formally deciding the *Brady* claim, reached conclusions on every element of the claim.

How binding are these conclusions on remand? Petitioner asserts

> In short, the Sixth Circuit did not mince words. Its analysis made clear, without directly stating it, that this case presents a *Brady* violation, plain and simple. Because AEDPA deference does not apply, and the Sixth Circuit already performed the *Brady* analysis, finding all elements of a violation, a writ should issue.

(Brief, ECF No. 102, PageID 3202.) While that is an accurate description of Judge Stranch's words, it does not provide any analysis of how the law of the case doctrine should apply here, except for arguing a distinction between this case and *Mapes v. Tate*. *Id*. at PageID 3201-02 n.4, citing 388 F.3d 187 (6th Cir. 2004).

Respondent argues that the law of the case doctrine does not apply and that "it would work an injustice to rubber-stamp dicta from the Sixth Circuit rather than to conduct a full review." (Brief, ECF No. 103, PageID 3228). Respondent's Brief then recites the findings of fact in the First District's decision and reminds us that they are entitled to a presumption of correctness. *Id.* at PageID 3229-30. He then references additional testimony from the trial which supports the guilty verdict. *Id.* at PageID 3230-35. Rehearsing the elements of a proper *Brady* claim, Respondent argues Dr. Heinig's testimony regarding the DNA testing was not exculpatory because it did not endorse the defense theory about DNA at trial. *Id.* at PageID 3235-38. Admitting that the lab notes were not produced by the State, Respondent asserts "[t]he question really is whether the evidence was material." *Id.* at PageID 3239. Respondent then argues there is no materiality because there was no prejudice. *Id.* at PageID 3239-41.

"Under the doctrine of law of the case, findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation." *United States v. Moored*, 38 F 3d 1419, 1421 (6th Cir. 1994), *citing United States v. Bell*, 988 F.2d 247, 250 (1st Cir. 1993). "As most commonly defined, the doctrine [of law of the case] posits that when a

court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983), *citing* 1B JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 0.404 (1980); accord: *Patterson v. Haskins*, 470 F.3d 645, 660-61 (6th Cir. 2006); *United States v. City of Detroit*, 401 F.3d 448, 452 (6th Cir. 2005). "If it is important for courts to treat like matters alike in different cases, it is indispensable that they 'treat the same litigants in the same case the same way throughout the same dispute.'" *United States v. Charles*, 843 F.3d 1142, 1145 (6th Cir. 2016), quoting BRYAN A. GARNER ET AL., THE LAW OF JUDICIAL PRECEDENT 441 (2016).

> While the "law of the case" doctrine is not an inexorable command, a decision of a legal issue establishes the "law of the case" and must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court, unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice.

*White v. Murtha*, 377 F.2d 428, 431-32 (5th Cir. 1967).

"The purpose of the doctrine is twofold: (1) to prevent the continued litigation of settled issues; and (2) to assure compliance by inferior courts with the decisions of superior courts." *United States v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990) (citation omitted).

> The doctrine of law of the case provides that the courts should not "reconsider a matter once resolved in a continuing proceeding." 18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION AND RELATED MATTERS § 4478 (4th ed. 2015). "The purpose of the law-of-the- case doctrine is to ensure that 'the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*.'" *Sherley v. Sebelius*, 689 F.3d 776, 780, 402 U.S. App. D.C. 178 (D.C. Cir. 2012) (quoting *LaShawn A. v. Barry*, 87 F.3d 1389, 1393, 318 U.S. App. D.C. 380 (D.C. Cir. 1996)). For a prior decision to control, the prior tribunal must have actually decided the issue. WRIGHT ET AL., *supra*, § 4478. "A position that has been assumed without decision for purposes of resolving another issue is not the law of the case." *Id.* "An alternate holding, however, does establish the law of the case." *Id.* Unlike

> claim preclusion, the law of the case does not apply to issues that a party could have raised, but did not. *Id.* The law-of-the-case doctrine is a prudential practice; a court may revisit earlier issues, but should decline to do so to encourage efficient litigation and deter "indefatigable diehards." *Id.*

*Howe v. City of Akron,* 801 F.3d 718, 739-740 (6th Cir. 2015).

The law of the case doctrine is not an appropriate basis for denying relief when the statement of the law in an appellate opinion is both dictum and in error. *Landrum v. Anderson*, 813 F.3d 330, 334 n.1 (6th Cir. 2016), citing *United States v. McMurray*, 653 F.3d 367, 375 (6th Cir. 2011), overruled on other grounds by *Voisine v. United States*, 136 S.Ct. 2272 (2016).

The mandate rule is a specific application of the law-of-the-case doctrine. The basic tenet of the mandate rule is that a district court is bound to the scope of the remand issued by the court of appeals. *United States v. Campbell,* 168 F.3d 263, 265 (6th Cir. 1999). The mandate rule is a distinct concept which preserves the hierarchy of the court system. *Scott v. Churchill,* 377 F.3d 565, 570 (6th Cir. 2004).

> The doctrine precludes a court from reconsideration of issues "decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition." *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997) (quoting *Coal Res., Inc. v. Gulf & Western Indus., Inc.,* 865 F.2d 761, 766 (6th Cir. 1989)). Pursuant to the law of the case doctrine, and the complementary "mandate rule," upon remand the trial court is bound to "proceed in accordance with the mandate and law of the case as established by the appellate court." *Id.* (quoting *Petition of U.S. Steel Corp.*, 479 F.2d 489, 493 (6th Cir.), cert. denied, 414 U.S. 859, 94 S. Ct. 71, 38 L. Ed. 2d 110 (1973)). The trial court is required to "implement both the letter and the spirit" of the appellate court's mandate, "taking into account the appellate court's opinion and the circumstances it embraces." *Brunet v. City of Columbus*, 58 F.3d 251, 254 (6th Cir. 1995).

*Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006). "Where there is substantial doubt as to whether a prior panel actually decided an issue, the district court should not be

11

foreclosed from considering the issue on remand." *Id*. at 539, *citing United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 398 (3rd Cir. 2003).

The cited authorities refer to the parts of judicial decisions which count for law of the case purposes as "findings," decisions of "issues" or "matters." This Court regards the Sixth Circuit opinion as embodying what amount to conclusions on mixed questions of law and fact. The court pronounced no new rule of law: its recitation of the elements of a Brady claim are not contested by Respondent. Instead, it applied that law to the facts of record and reached conclusions about what the law required as applied to those facts. It had the entire state court record before it and it did not assume any facts purely for the sake of argument. On remand this Court has before it exactly the same record as was before the circuit court. To reach different conclusions on the application of law to those facts would completely undermine the purpose of the law of the case doctrine. To put it another way, the Sixth Circuit has decided on the record as a whole that the lab notes are *Brady* material and withholding them violated the *Brady* doctrine. Respondent has offered no persuasive reason why this Court should not adopt those conclusions as its own.

**3.     Smith's Freestanding Ineffective Assistance of Appellate Counsel Claim**

The Sixth Circuit also remanded for decision on the merits that portion of Smith's Ground Seven, his freestanding ineffective assistance of appellate counsel claim, that is not procedurally defaulted, to wit, his claim that his appellate attorney provided ineffective assistance of appellate counsel when she did not raise the *Brady* claim on direct appeal.

The remedy for the *Brady* violation will be the issuance of a conditional writ of habeas

corpus. In obedience to that writ, the State will either release Smith or retry and reconvict him. In either even, the judgment of conviction will be vacated. Whether it is replaced with an unconditional release or a new judgment of conviction which will then be appealable, the question of whether Smith received ineffective assistance of appellate counsel on his first direct appeal will be moot. If the Court follows the Magistrate Judge's recommendation as to the Brady claim, it should also dismiss Ground Seven as moot.

**Conclusion**

In accordance with the foregoing discussion, it is respectfully recommended that the Court issue a conditional writ of habeas corpus requiring the State of Ohio to release Smith unconditionally or retry him within six months of the date of judgment.

November 7, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).