# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER SMITH, | : | Case No. 1:12-cv-425 |
| Petitioner, | : | Judge Timothy S. Black |
| vs. | : | Magistrate Judge Michael R. Merz |
| WARDEN, Toledo Correctional Institution, | : | |
| Respondent. | : | |

## ORDER DENYING PETITIONER'S MOTION
## FOR RECONSIDERATION (Doc. 156)

This civil action is before the Court on Petitioner's motion for reconsideration. (the "Motion for Reconsideration").  (Doc. 156).

## I.  BACKGROUND

In brief, the background facts relevant to the Motion for Reconsideration are as follows.[1]  (*Id.*)  On May 25, 2012, Petitioner filed a petition for a writ of habeas corpus. (Doc. 1).  Then, on November 7, 2019, after the lengthy proceedings detailed in the Court's prior Orders, the Magistrate Judge issued a Report and Recommendation, recommending that the Court issue a conditional writ of habeas corpus.  (Doc. 115).

On April 4, 2020, Petitioner filed a Notice informing this Court that a staff member at the Toledo Correctional Institution ("TCI")—the correctional facility in which Petitioner was housed—had tested positive for COVID-19.  (Doc. 122 at 1–2).

---

[1] This case has an extensive history, which the Court will not attempt to fully set forth here.  The Court incorporates the background facts set forth in its previous Orders.  (*See* Docs. 125, 155).

Additionally, Petitioner informed the Court that he had a preexisting condition which rendered him particularly susceptible to becoming critically ill from COVID-19. (*Id.*)

In response, the Court issued a Notation Order, ordering the parties to:

> [C]onfer by telephone on the following issue: **whether**, if this Court were to issue a conditional writ of habeas corpus as to Petitioner, **the parties *could* agree** that, during the conditional period, Petitioner would be released on the condition that he remain on home incarceration (with any other appropriate conditions or monitoring requirements), instead of remaining detained at TCI.

(Not. Order, Apr. 6, 2020 (emphasis added)). The Court gave the parties an April 8, 2020 deadline to both confer by telephone as required by the Notation Order and advise the Court whether they had been able to reach an agreement. (*Id.*)

On April 8, 2020, the Court received an email from Petitioner's counsel, stating that despite her many attempted calls and emails, Respondent's counsel had been unresponsive. (Doc. 125 at 27). In other words, the Court learned that, notwithstanding its clear Notation Order, Respondent's counsel had wholly failed to participate in the required telephone conference. (*Id.*)

On April 9, 2020, the Court issued an unconditional writ of habeas corpus, requiring Petitioner's immediate release from custody (the "Unconditional Writ"). (*Id.* at 31). Thereafter, the Court learned that, notwithstanding the Unconditional Writ, Petitioner remained in detention. (Doc. 155 at 1–2). Accordingly, the Court was forced to issue two additional Orders, to secure Petitioner's release (collectively with the Unconditional Writ, the "Release Orders"). (*Id.*) Petitioner was ultimately released on April 14, 2020. (*Id.* at 2).

Following the issuance of the Unconditional Writ, but prior to his release, Petitioner filed a Rule 60(b) motion, asking the Court to amend the Unconditional Writ, in order to bar the State from retrying him (the "Emergency Motion"). (Doc. 134). Petitioner argued that it was proper for the Court to amend the Unconditional Writ, based on Respondent's and the State's (collectively, the "State Actors") noncompliance with this Court's Orders.[2] (Doc. 152 at 2–3).

On April 24, 2020, after extensive briefing, the Court issued an Order denying Petitioner's Emergency Motion. (Doc. 155). Critical to the Court's decision was the fact that the Emergency Motion requested relief unavailable under the Rules—that is, Petitioner asked the Court to amend the Unconditional Writ, based on events occurring <u>after</u> the Writ's issuance. (*Id.* at 7–8 (citing *D'Ambrosio v. Bagley*, 656 F.3d 379, 388 (6th Cir. 2011)).

On April 28, 2020, Petitioner filed the instant motion, asking the Court to reconsider its Rule 60(b) Order. (Doc. 156). Upon review, the Court finds that no further briefing is required and, accordingly, the Motion for Reconsideration is deemed ripe for decision.

## II. ANALYSIS

In the Motion for Reconsideration, Petitioner moves the Court to reconsider its April 24, 2020 Order. (*Id.*) Petitioner argues that the Court overlooked a material fact that was in existence <u>prior to</u> the issuance of the Unconditional Writ—that is, the State

---

[2] Petitioner also argued that it was proper to bar retrial to enforce the Unconditional Writ. (Doc. 155 at 4–5). However, Petitioner's April 14, 2020 release mooted this argument. (*Id.*)

3

Actors' intent to keep Petitioner in custody unlawfully, *i.e.*, regardless of whether the Court ordered his release. (*Id.* at 3).

As a threshold matter, it is important to note that, in the context of a habeas proceeding, there is nothing inherently suspect about a state's desire to keep a habeas petitioner in custody. Indeed, in opposing habeas relief, the state respondent will naturally hold the position that the habeas petitioner's conviction was constitutional, and that release is unwarranted. Moreover, even when habeas relief is granted, the customary practice is for a habeas court to issue of a conditional writ, which allows the state to keep the petitioner in custody pending a decision on retrial.

Thus, the essential inquiry in the instant case is not whether the State Actors harbored a pre-Writ intent to keep Petitioner in custody—but rather, whether the State Actors harbored a pre-Writ intent **to do so unlawfully**—*e.g.*, by violating this Court's Orders and misleading other judges. With this distinction in mind, the Court turns to Petitioner's specific arguments.

According to Petitioner, the State Actors' intent to keep him detained unlawfully is evidenced by: (1) their refusal to confer by telephone, as required by the Court's April 6, 2020 Notation Order; and (2) their pattern of misconduct and noncompliance with the Court's Release Orders. (*Id.* at 3–7; *see also* Not. Order, Apr. 6, 2020; Docs. 125, 132, 141).

On review, Petitioner's Motion for Reconsideration must fail.

First, Petitioner argues that the failure to confer by telephone, as required by the April 6, 2020 Notation Order, evidences a pre-Writ intent to violate any Court Order

4

requiring release.  (Doc. 156 at 3–5).  Specifically, Petitioner claims that Respondent failed to participate in the required conference, because Respondent's counsel could not have done so without betraying the State Actors' intent to keep Petitioner in custody at all costs (*i.e.*, unlawfully and in violation of any future Court Orders).  (*Id.*)

In order for the Court to adopt Petitioner's argument, the Court would have to assume that the <u>only</u> reason Respondent failed to participate in the conference was because she <u>could not</u> have done so if the State Actors intended to violate the Court's future Orders.  However, the Court cannot reach these conclusions.

As an initial matter, Respondent <u>could have participated</u> in the conference without divulging any unlawful intent to violate future Court Orders.  Specifically, the April 6, 2020 Notation Order required the parties to hold a teleconference, then advise the Court **if they could agree** to any conditions of supervision that would allow Petitioner to be released pending the State's consideration of retrial.  (Not. Order, Apr. 6, 2020).  Because the April 6, 2020 Notation Order merely required the parties to confer in an attempt to reach an agreement, Respondent could have participated in the conference and maintained the position that the State would not agree to any conditions of release.

Moreover, this Court cannot conclude that the <u>only reason</u> Respondent failed to participate was because the State Actors intended to violate the Court's future Orders.  Indeed, as the Court noted in the Unconditional Writ, Respondent clearly misunderstood the Court's direction in the Notation Order.  (Doc. 125 at 28).  Thus, Respondent's failure to participate may also have resulted from Respondent's counsel's failure to read or understand the Notation Order in the first instance.  To be sure, Respondent's counsel's

failure to carefully read or comprehend clear and unambiguous directions from the Court is a poor excuse for failing to abide by the Notation Order.  Regardless, it does provide an alternative explanation for the failure to participate in the conference.

In short, an intent to violate future Court Orders is not the only possible, nor the most logical, inference to draw from Respondent's failure to participate in the conference.  Thus, the Court cannot make such an inference.

Second, Petitioner argues that, since the issuance of the Unconditional Writ, the State Actors have engaged in a "pattern of misconduct," which evidences that they never intended to comply with any of the Court's Orders requiring Petitioner's release in the first place.  (Doc. 156 at 5–6).  Specifically, Petitioner points to Respondent's refusal to abide by the Unconditional Writ, as well as the State's efforts to mislead the state court and deceptively procure a detention order.  (*Id.*)

This Court previously expressed that the State Actors' apparent misconduct in this case has been astounding.  (Doc. 155 at 8).  The Court's Unconditional Writ stated, in no uncertain terms, that Petitioner was to be immediately released from custody, as his detention was premised upon an unconstitutional conviction.  (Doc. 125 at 31).  Despite this fact, the State Actors kept Petitioner in custody for another five days thereafter.  (Doc. 155 at 2).  While the violations of this Court's Release Orders are unacceptable, the Court cannot assume, based on those post-Writ violations alone, that the State Actors harbored an intent to commit these violations prior to the issuance of the Unconditional Writ.

6

In fact, the record presently before the Court undermines the notion that such intent existed. As the record reflects, immediately after the issuance of the Unconditional Writ, the State Actors contacted Judge Ruehlman to request an order to stop Petitioner's release. (Doc. 156-1 at 6). Judge Ruehlman required the State prosecutors to provide him with additional information—specifically, a copy of the Unconditional Writ. (*Id.* at 7–8). Rather than complying with Judge Ruehlman's direction, the State prosecutors allegedly went to another state judge and deceptively procured an order to transport Petitioner back to Hamilton County. (*Id.* at 8; *see also* Doc. 136-2 at 2). Again, this alleged conduct is astounding.

However, the conduct, as alleged, does not establish that the State Actors anticipated and fully intended to disregard a future Unconditional Writ or any other future orders requiring release. Rather, it would appear that, after the issuance of the Unconditional Writ, the State engaged in a last minute and nefarious scramble in order to prolong Petitioner's detention. This scramble implies a level of unpreparedness inconsistent with a preconceived intent to violate this Court's Orders. Thus, the Court cannot conclude that the post-Writ misconduct has any direct correlation to a pre-Writ intent, as Petitioner argues.

### III. CONCLUSION

In sum, while Petitioner has alleged that the State Actors harbored a pre-Writ intent to violate this Court's Release Orders, the evidence of record does not lead this Court to make such an inference. And the Court cannot reconsider its April 24, 2020 Order on the basis of mere speculation. What the Court <u>can</u> do, however, is fully

7

investigate the State Actors' noncompliance with the Court's lawful Orders, in the context of a contempt proceeding.

Based upon the foregoing, Petitioner's Motion for Reconsideration (Doc. 156) must be **DENIED**.

**IT IS SO ORDERED.**

Date:  May 5, 2020

*Timothy S. Black*
Timothy S. Black
United States District Judge