# IN THE
## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## AT CINCINNATI

---------------------------------------------

### CASE NO. 1:12-cv-00425

## CHRISTOPHER SMITH,
*Petitioner-Appellee,*

v.

## WARDEN, TOLEDO CORRECTIONAL INSTITUTION,
*Respondent-Appellant.*

--------------------------------------------

## ON REMAND FROM THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT IN CASE NO. 20-3472

---

## BRIEF ON REMAND
## BY PETITIONER CHRISTOPHER SMITH

---

Michele L. Berry   (0081939)
The Law Office of Michele L. Berry, LLC
3584 Mooney Ave.
Cincinnati, OH 45208
Tel: 513.919.5315
mberrylaw2007@gmail.com
*Counsel for Petitioner-Appellee*
*Christopher Smith*

# TABLE OF CONTENTS

TABLE OF CONTENTS………………………………………………………………...i

TABLE OF AUTHORITIES……………………………………………………………ii

INTRODUCTION………………………………………………..…………………...1

ARGUMENT………………………………………………………………………....2

I. The Sixth Circuit in *Smith I* made findings on all elements of the IAAC claim and the *Brady* claim as it pertains to the IAAC claim. The *Smith I* analysis controls this Court's review of the IAAC claim and the *Brady* claim as it pertains to and underlies the IAAC issue.…………………………………………...……………..2

    A. The law of the case doctrine applies to *Smith I*'s *Brady* analysis because according to the Sixth Circuit, AEDPA deference applies only to this Court's review of the IAAC claim, whereas *de novo* review applies to the underlying *Brady* claim. Likewise, the law of the case doctrine applies to *Smith I*'s IAAC analysis because its analysis is largely identical to the AEDPA deference standard of review for this claim. Accordingly, based on law of the case, the starting point of this Court's AEDPA review of the IAAC claim begins with the *Smith I* Court's binding findings concerning the IAAC and *Brady* claims.………………………….…………………….……………8

      1. The law of the case doctrine…………………………………………....8

      2. Despite that this Court must apply AEDPA deference to the IAAC claim, *de novo* review still applies to the underlying *Brady* claim as it pertains to the IAAC claim…………………………………………………...10

      3. This Court must look to *Smith I* for guidance to resolve conflicts between *Smith I* and *Smith II* for multiple reasons…………………………………10

II. Smith is entitled to relief on his freestanding IAAC claim because, according to the Sixth Circuit, the state court's analysis of the IAAC claim is contrary to or an unreasonable application of *Strickland* or an unreasonable determination of the facts…………………………………………………………………………...12

   A. Consideration of the state appellate court's "abuse of discretion"
      language…………………………………………………………………...18

III.  Other considerations on Remand…………………………………………..22

   A.  An additional conflict exists between *Smith I* and *Smith II* concerning to which
      state court decision, if any, AEDPA deference applied.  Based on the law of
      the case, the *Trimble v. Bobby* older-decision-resolves-direct-conflicts
      doctrine, and longstanding Sixth Circuit precedent, the state appellate court's
      brief statement about Smith's *Brady* claim in its decision rejecting the Rule
      26(B) Application to Reopen Appeal does not warrant AEDPA deference….22

   B.  This Court should reissue the portion of its decision granting Smith's writ of
      habeas corpus based on the state court's unreasonable factual determinations
      because the Sixth Circuit never affirmed or reversed the writ on this basis, and
      the Sixth Circuit ignored the crucial "abuse of discretion" language, which
      should have guided its review of the state appellate court's statement about
      Smith's *Brady* claim………………………………………………………….26

   C.  When faced with contradictions between *Smith I* and *Smith II*, this Court
      should turn to *Smith I* for guidance based on the law of the case doctrine, the
      *Trimble v. Bobby* older-decision-resolves-direct-conflicts doctrine, and the fact
      that the IAAC issue was remanded by *Smith I* wherein the Sixth Circuit made
      specific and emphatic findings on the issue which still stand………………..30

CONCLUSION………………………………………………………………………35

CERTIFICATE OF SERVICE………………………………………………………37

# TABLE OF AUTHORITIES

Cases

*Brady v. Maryland* (1963), 373 U.S. 83……………………………………..*passim*

*Brunet v. City of Columbus*, 58 F.3d 251 (6th Cir. 1995)……………………………9

*Coal Res., Inc. v. Gulf & Western Indus., Inc.*, 865 F.2d 761 (6th Cir. 1989)…....9, 23

*Cone v. Bell* (2009), 556 U.S. 449………………………………………………………….4

*Davie v. Mitchell*, 547 F.3d 297 (6th Cir. 2008)……………………………………..24

*Edmonds v. Smith*, 922 F.3d 737 (6th Cir. 2019)……………………………………..8

*Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306 (6th Cir. 1997)………………..9, 23

*James v. Brigano*, 470 F.3d, 636 (6th Cir. 2006)……………………………………24

*Joseph v. Coyle*, 469 F.3d 441 (6th Cir. 2006)………………………………………10

*Kyles v. Whitley* (1995), 514 U.S. 419………………………………….………..4

*Lockyer v. Andrade* (2003), 538 U.S. 63…………………………………………….13

*Mapes v. Tate*, 388 F.3d 187 (6th Cir. 2004)…………………………………….…5

*Patterson v. Haskins*, 316 F.3d 596 (6th Cir. 2003)………………………………24

*Petition of United States Steel Corp.,* 479 F.2d 489 (6th Cir. 1973)………………...26

*Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619; 614 N.E.2d 748………….19

*Scott v. Churchill,* 377 F.3d 565 (6th Cir. 2004)………………………………...8, 9

*Smith v. Robbins* (2000), 528 U.S. 259………………………………………………5, 13

*Smith v. Warden, Toledo Correctional Institution*, 780 Fed. Appx. 280
    (6th Cir. 2019)…………………………………………………………………...*passim*

*Smith v. Warden, Toledo Correctional Institution*, 780 Fed. Appx. 280
    (6th Cir. March 1, 2022)……………………………………………*passim*

*Strickland v. Washington* (1984), 466 U.S. 668………5, 6, 12, 13, 14, 15, 16, 18, 19

*State v. Adams* (1980), 62 Ohio St.2d 151; 404 N.E.2d 144………………………...19

*Trimble v. Bobby*, 804 F.3d 767 (6th Cir. 2015)………………7, 11, 18, 22, 25, 30, 35

*United States v. Ayers*, 759 F.Supp.2d 945 (S.D.Ohio; December 22, 2010)…...26, 30

*United States v. Bell*, 988 F.2d 247 (1st Cir. 1993)…………………………………....8

*United States v. Campbell*, 168 F.3d 263 (6th Cir. 1999)……………………………9

*United States v. Charles*, 843 F.3d 1142 (6th Cir. 2016)…………………………..8

*United States v. Moored*, 38 F 3d 1419 (6th Cir. 1994)………………………………8

*United States v. Todd*, 920 F.2d 399 (6th Cir. 1990)……...………………………..8

*Westside Mothers v. Olszewski*, 454 F.3d 532 (6th Cir. 2006)………………………9

*Williams v. Taylor* (2000), 529 U.S. 362…………………………………………14

*Winston v. Brunsman*, 566 Fed.Appx. 422 (6th Cir. 2014) (per curiam)…………..24

*Wogenstahl v. Mitchell*, 668 F.3d 307 (6th Cir. 2012)………………………………24

*Ylts v. Nunnemaker* (1991), 501 U.S. 797………………………………………...12

Other resources

*Wright & Miller* §3867 Law of the Case for Remand………………………………...8

## <u>INTRODUCTION</u>

Christopher Smith has steadfastly maintained his innocence to an armed robbery of a Cincinnati Bell Store in 2007, which resulted in the theft of approximately $800 and for which Smith served twelve-and-a-half years of an eighteen-year sentence. In April 2020, this Court granted Smith an unconditional writ of habeas corpus ordering his immediate and unconditional release based on a *Brady* claim involving DNA evidence identifying an alternate suspect.

The Sixth Circuit in *Smith II* reversed his writ and opened the possibility of Smith having to return to prison to serve his remaining sentence. As recently as January 14, 2022, Smith was offered a deal for time-served—thereby closing the case and ending the threat of returning to prison—in exchange for a guilty plea. Smith rejected that offer on the basis of his innocence.

Now this case is once again remanded to this Court in a posture similar to the situation that unfolded three years ago. On June 18, 2019, the Sixth Circuit Court of Appeals determined that ineffective assistance of appellate counsel (hereinafter "IAAC") excused the procedural default of Smith's *Brady* claim. The Sixth Circuit remanded this case to this Court to address the merits of both Smith's *Brady* claim and his freestanding IAAC claim, but the IAAC claim was deemed moot at that time because this Court issue a writ based on the *Brady* claim, which afforded greater relief (a new trial as opposed to a reopened state court direct

appeal).

Despite that Smith has been issued an unconditional writ of habeas corpus and had that writ reversed in the intervening three years, the freestanding IAAC issue remains in the same posture as it was in 2019 with strong and binding guidance from the Sixth Circuit in *Smith I* regarding the IAAC claim and the *Brady* claim as it pertains to IAAC. Just as in 2019, this case is remanded from the Sixth Circuit in *Smith I* to decide the freestanding IAAC claim. Indeed, the panel in *Smith II* did not touch on the IAAC issue, but simply sent the case back down to continue where this Court left off in 2019—with clear direction on IAAC issues from the Sixth Circuit in *Smith I*. Although *Smith I* and *Smith II* reflect panels with differing opinions about the *Brady* doctrine and the scope of oversight federal courts should invoke when reviewing state convictions, these two decisions clearly reflect ideological divides on the Sixth Circuit. Regardless, the decision that has addressed the specific issues related to IAAC is *Smith I*, and the *Smith I* analysis regarding IAAC controls here for this reason among other reasons to be discussed *infra*.

## **ARGUMENT**

I. **The Sixth Circuit in *Smith I* made findings on all elements of the IAAC claim and the *Brady* claim as it pertains to the IAAC claim. The *Smith I* analysis controls this Court's review of the IAAC claim and the *Brady* claim as it pertains to and underlies the IAAC issue.**

Indeed, *Smith I*'s findings about the underlying *Brady* claim applies to this

Court's evaluation of Smith's IAAC claim on remand. Despite that Smith's writ has been reversed, the Sixth Circuit's decision in *Smith II* was based on AEDPA deference to the First District Court of Appeals statements concerning the *Brady* claim limited to its decision rejecting Smith's Rule 26(B) Application to Reopen Appeal. Whereas in *Smith I*, the Sixth Circuit reviewed Smith's *Brady* claim on fresh review and made unequivocal findings about each element of Smith's *Brady* claim despite being careful not to decide that ultimate issue due to limitations in the applicable Certificate of Appealability.

*Smith I*, employing *de novo* review, decisively and emphatically found all the elements of a *Brady* violation as it reviewed the claim in the context of the IAAC claim. *Smith v. Warden, Toledo Correctional Institution*, 780 Fed.Appx 208, 226, 228-229 (6th Cir. 2019) (hereinafter "*Smith I*"). *Smith I* has not been reversed, and its findings concerning *Brady* and IAAC still are binding on this Court through the law of the case doctrine. These findings concerning *Brady* are as follows:

(1)     The *Brady* claim before the state courts was both "significant and obvious." *Smith I*, 780 Fed.Appx. 208, 226;

(2)     The suppressed DNA lab notes "directly undermine" the fact-finder's theory of guilt. *Id.* at 228;

(3)     the suppressed DNA lab notes undermine confidence in the outcome of Smith's trial. *Id.* at 229;

(4)     and there is a "reasonable probability of acquittal" if the suppressed evidence had been disclosed. *Id.* at 229.

*Brady* requires the prosecution to disclose impeachment and exculpatory evidence to the defense "where the evidence is material either to guilt or to punishment." *Kyles v. Whitley* (1995), 514 U.S. 419, 432 (quoting *Brady,* 373 U.S. at 87). "[E]vidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell* (2009), 556 U.S. 449, 469–70. Such "[a] 'reasonable probability' of a different result is . . . shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" Thus, the *Smith I* Court found all the elements of a *Brady* claim.

The *Smith I* Court's findings specific to IAAC are as follows:

(1) The underlying *Brady* claim was "significant," "obvious," "preserved," "raised," and "fully litigated" in the state trial court;

(2) The *Brady* claim was Smith's "strongest" argument for reversal and "clearly stronger" than any of the arguments for reversal appellate counsel raised on appeal;

(3) Even the trial judge admitted that a jury might find the suppressed lab notes persuasive;

(4) As to appellate counsel's performance, it was "objectively unreasonable" for appellate counsel not to raise the *Brady* claim;

(5) If a reasonable factfinder knew that Allen's DNA was present at almost every locus tested on the wig, while Smith's DNA was not detected, there would be a reasonable probability of acquittal;

(6) Thus, as to prejudice caused by appellate counsel's objectively unreasonable performance, because there is a reasonable probability that Smith's conviction would have been reversed had he raised the *Brady* claim, it was IAAC not to raise it on direct appeal.

*Smith I* at 226-229.

The standard for an IAAC claim "is that enunciated in *Strickland*." *Smith v. Robbins* (2000), 528 U.S. 259, 285. A petitioner must show that counsel's performance was "objectively unreasonable" and that there was "a reasonable probability that ... he would have prevailed on his appeal" had counsel raised the unreasonably omitted issues. *Id.* (citing *Strickland v. Washington* (1984), 466 U.S. 668, 687-91, 694; *see also Mapes v. Tate*, 388 F.3d 187, 191 (6th Cir. 2004).

Because *Smith I*'s rulings pertaining to IAAC have not been reversed, this Court is bound by its determinations as to the IAAC and *Brady* claims as will be more fully explained *infra*. Indeed, because the Sixth Circuit already found that: 1) appellate counsel's failure to raise the *Brady* claim in Smith's direct appeal constituted "objectively unreasonable" performance; 2) there is a reasonable probability that Smith's conviction would have been reversed had the *Brady* claim been raised on appeal; and 3) appellate counsel was ineffective under *Strickland* for failing to raise the *Brady* issue—this Court is bound to find that the state appellate court ruled contrary to or unreasonably applied *Brady* or unreasonably determined the facts when it rejected Smith's IAAC claim.

This Court must ask, "did the state appellate court rule contrary to or unreasonably apply *Strickland* when it found that appellate counsel's performance—which is *per se* objectively unreasonable and resulted in prejudice

under *Strickland* based on *Smith I*—nonetheless constituted constitutionally sufficient performance under *Strickland*?"

The answer to this question is a resounding "yes." This Court cannot reasonably or fair-mindedly conclude that "objectively unreasonable" performance, which but for, would have resulted a reasonable probability of reversal on appeal, is constitutionally adequate under any standard. Despite that AEDPA deference is being applied, when the starting point is "objectively unreasonable performance" which resulted in prejudice under *Strickland*, any conclusion other than the Sixth Circuit's conclusion in *Smith I*—that appellate counsel provided constitutionally ineffective counsel under *Strickland*—is inherently condoning what has already been deemed constitutionally ineffective assistance of counsel under *Strickland*.

Furthermore, the Sixth Circuit in *Smith I* clarified points that have been confusing the courts for more than fourteen years of litigation in this case. Specifically, *Smith I* made clear that certain arguments that the State had advanced, and the courts had adopted, were based on evidence not in the record. These clarifications led this Court to issue a writ of habeas corpus not only on the *Brady* issue, but also on the basis that the state court unreasonably determined the facts by relying on purported evidence that exists nowhere in the record. Doc.125; PageID#3373-3374 (Decision Granting Habeas Writ). As will be addressed *infra*

in Section III(B), the Sixth Circuit in *Smith II* never affirmed or reversed this basis for Smith's writ of habeas corpus.

To the extent *Smith I* and *Smith II* differ and contradict one another as to the facts and what evidence exists in the record, and to the extent these contradictions impact this Court's IAAC analysis, this Court must follow *Smith I* according to the Sixth Circuit in *Trimble v. Bobby* and the law of the case doctrine. *See Trimble v. Bobby*, 804 F.3d 767, 777 (6th Cir. 2015) (when two rulings are directly opposite of one another, look to the oldest decision on point).

In sum, *Smith I* addressed the IAAC issue and also found that many of the State's arguments to date (and the state court rulings) were based on evidence outside the record. These findings led this Court, on remand, to correctly find that the state trial court had unreasonably determined the facts. The panel in *Smith II* did not overturn these findings, and thus, the rulings in *Smith I* continue to control per the law of the case.

**A. The law of the case doctrine applies to *Smith I*'s *Brady* analysis because according to the Sixth Circuit, AEDPA deference applies only to this Court's review of the IAAC claim, whereas *de novo* review applies to the underlying *Brady* claim. Likewise, the law of the case doctrine applies to *Smith I*'s IAAC analysis because its analysis is largely identical to the AEDPA deference standard of review for this claim. Accordingly, based on law of the case, the starting point of this Court's AEDPA review of the IAAC claim begins with the *Smith I* Court's binding findings concerning the IAAC and *Brady* claims.**

**1. The law of the case doctrine.**

According to the law of the case doctrine, after a court decides a matter in dispute, that decision should govern the same issues in subsequent stages of the same case. *Scott v. Churchill,* 377 F.3d 565, 569-70 (6th Cir. 2004). *See also U.S. v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990) (the purpose of the law of the case doctrine is to assure lower courts' compliance with decisions of higher courts in the same case); *Edmonds v. Smith,* 922 F.3d 737, 739 (6th Cir. 2019) (law of the case doctrine applies to later decisions in the same case); *Wright & Miller* §3867 Law of the Case for Remand (once an issue is decided in a case it should not be re-decided later in the case).

As this Court has previously explained:

"Under the doctrine of law of the case, findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation." *United States v. Moored,* 38 F 3d 1419, 1421 (6th Cir. 1994), citing *United States v. Bell*, 988 F.2d 247, 250 (1st Cir. 1993)…"If it is important for courts to treat like matters alike in different cases, it is indispensable that they 'treat the same litigants in the same case the same way throughout the same dispute.'" *United States v. Charles*, 843 F.3d 1142, 1145 (6th Cir. 2016), quoting Bryan A. Garner et al., The Law of Judicial

Precedent 441 (2016).

…

The mandate rule is a specific application of the law-of-the-case doctrine. The basic tenet of the mandate rule is that a district court is bound to the scope of the remand issued by the court of appeals. *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999). The mandate rule is a distinct concept which preserves the hierarchy of the court system. *Scott v. Churchill*, 377 F.3d 565, 570 (6th Cir. 2004).

The doctrine precludes a court from reconsideration of issues "decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition." *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997) (quoting *Coal Res., Inc. v. Gulf & Western Indus., Inc.*, 865 F.2d 761, 766 (6th Cir. 1989)). Pursuant to the law of the case doctrine, and the complementary "mandate rule," upon remand the trial court is bound to "proceed in accordance with the mandate and law of the case as established by the appellate court." *Id.* (quoting *Petition of U.S. Steel Corp.*, 479 F.2d 489, 493 (6th Cir.), cert. denied, 414 U.S. 859, 94 S. Ct. 71, 38 L. Ed. 2d 110 (1973)). The trial court is required to "implement both the letter and the spirit" of the appellate court's mandate, "taking into account the appellate court's opinion and the circumstances it embraces." *Brunet v. City of Columbus*, 58 F.3d 251, 254 (6th Cir. 1995). *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006).

Doc. 115; PageID#3291-3294 (Report & Recommendations).

Specific to the *Brady* claim, this Court explained that "the Sixth Circuit has decided on the record as a whole that the lab notes are *Brady* material and withholding them violated the *Brady* doctrine," and that appellate counsel's performance was objectively unreasonable resulting in prejudice. *Id.* at PageID#3294, 3290. Thus, "to reach different conclusions on the application of law to those facts would completely undermine the purpose of the law of the case doctrine." *Id.* at PageID#3294.

**2. Despite that this Court must apply AEDPA deference to the IAAC claim, *de novo* review still applies to the underlying *Brady* claim as it pertains to the IAAC claim.**

Although this Court must ultimately apply AEDPA deference to the IAAC claim, *Smith I*'s findings concerning the IAAC claim and the underlying *Brady* claim as it pertains to the IAAC claim are still binding on this Court and create the starting point for the IAAC analysis. *Smith I*, 708 Fed.Appx. 208, 226, 228-229 (6th Cir. 2019). Furthermore, when evaluating an IAAC claim under AEDPA deference, the Sixth Circuit nonetheless reviews the underlying questions of fact and law using a *de novo* standard of review. *See Joseph v. Coyle*, 469 F.3d 441, 461-462 (6th Cir. 2006) (Sixth Circuit evaluating IAC claim under AEDPA deference reviewed the specific alleged failures using a *de novo* standard. For example, the Court used a reasonable probability analysis to evaluate the trial counsel's failure to object).

Accordingly, the *Smith I* Court's *de novo* findings concerning all the elements of Smith's *Brady* claim are binding on this Court for purposes of the AEDPA review of the IAAC claim.

**3. This Court must look to *Smith I* for guidance to resolve conflicts between *Smith I* and *Smith II* for multiple reasons.**

Additionally, the Sixth Circuit in *Smith I* addressed, made findings about, and remanded the IAAC issue, whereas the *Smith II* panel made no findings about the the IAAC issue. Accordingly, this Court must look to *Smith I* for the law of the

case on this issue.

Further still, the Sixth Circuit also has explained that when two decisions are in conflict, the older decision on point controls. Accordingly, to the extent *Smith II* conflicts with *Smith I* concerning what facts exist in the record and the *Brady* claim (as it pertains to and underlies the freestanding IAAC claim under review by this Court), this Court must follow *Smith I*'s findings. *See Trimble v. Bobby*, 804 F.3d 767, 777 (6th Cir. 2015) (Both rulings cannot be right, as they look in opposite directions. To resolve this Janus-like dilemma, we look to the oldest decision on point.")[1]

For these reasons, the starting point of this Court's AEDPA deference analysis of the IAAC claim is not ground zero. Instead, the inquiry is constrained and starts with the following points from the *Smith I* Sixth Circuit decision:

(1) the suppressed evidence undermines confidence in the outcome of Smith's trial, *Smith I* at 229;

---

[1] It is evident that *Smith I* and *Smith II* are contradictory beyond differences attributed to *Smith I* applying *de novo* review to the *Brady* claim and *Smith II* applying AEDPA deference. And to the extent the facts and what evidence exists in the record impacts this Court's IAAC analysis, this Court must follow *Smith I* according to the Sixth Circuit in *Trimble v. Bobby* and the law of the case doctrine.

Significant factual contradictions exist between *Smith I* and *Smith II*. *Smith I* specifically established as factually wrong certain allegations often advanced by the State throughout the fourteen years of litigation in this case to debunk the significance of Smith's *Brady* evidence. These contradictions as they relate to the issues on remand will be explained in Section III(C) *infra*.

(2) there is a "reasonable probability of acquittal" if the suppressed evidence had been disclosed, *Id.* at 229;

(3) the *Brady* claim before the state courts was both "significant and obvious," *Id.* at 226;

(4) the suppressed evidence "directly undermines" the fact-finder's theory of guilt, *Id.* at 228;

(5) appellate counsel's performance was "objectively unreasonable";

(6) there is a reasonable probability that Smith's conviction would have been reversed had the *Brady* claim been raised on appeal; and

(7) appellate counsel was ineffective under *Strickland* for failing to raise the *Brady* issue. *Smith I*, 780 Fed.Appx. at 226-229.

## II. Smith is entitled to relief on his freestanding IAAC claim because, according to the Sixth Circuit, the state court's analysis of the IAAC claim is contrary to or an unreasonable application of *Strickland* or an unreasonable determination of the facts.

The Sixth Circuit remanded Smith's freestanding IAAC claim for failure to raise the *Brady* issue for review on the merits under the AEDPA deference standard. This inquiry asks whether the state court unreasonably determined the facts and/or ruled contrary to or unreasonably applied clearly established Supreme Court precedent in *Strickland v. Washington* when it rejected Smith's first Rule 26(B) Application.[2]

_____

[2] The First District's opinion rejecting Smith's first Ohio App. Rule 26(B) Application to Reopen is the last explained decision from the Ohio Courts involving the IAAC issue, so it is the decision this Court should review. *Ylts v. Nunnemaker* (1991), 501 U.S. 797. Smith's second Rule 26(B) Application and the appeal of his post-conviction petition under ORC 2953.21 are not at issue, because

Despite that the Sixth Circuit in *Smith I* reviewed Smith's IAAC claim only for the "cause and prejudice" analysis to determine whether the procedural default of Smith's *Brady* claim could be excused, which technically involved a *de novo* review, the AEDPA standard of review for an IAAC claim is identical to the review performed and determinations already made by the Sixth Circuit.

Accordingly, the analysis once again is curtailed because the Sixth Circuit already found: (1) "objective unreasonableness" on the part of appellate counsel for failure to raise the *Brady* claim; and (2) that that there is a reasonable probability that Smith's conviction would have been reversed had appellate counsel raised the *Brady* claim. Likewise, **the Sixth Circuit already unambiguously determined that IAAC occurred on the basis of these two factors**.[3] *Smith I* at 226-229. This Court must accept these determinations as the starting point of the AEDPA deference analysis.

In order for a state court decision to be an "unreasonable application" of *Strickland*, the state court's application of clearly established law must be

---

as the Sixth Circuit explained, those actions were rejected on procedural grounds. In the instance of the second Rule 26(B) Application, the court rejected even the threshold IAAC claim on procedural grounds. *See Smith I* at 223-224.

[3] To establish an IAAC claim, a petitioner must show that counsel's performance was "objectively unreasonable" and that there was "a reasonable probability that . . . he would have prevailed on his appeal" had counsel raised the unreasonably omitted issues. *Smith v. Robbins,* 528 U.S. 259, 285 (2000) citing *Strickland v. Washington,* 466 U.S. 668, 687–91, 694 (1984).

"objectively unreasonable," *Lockyer v. Andrade* (2003), 538 U.S. 63, meaning that "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the case." *Williams v. Taylor* (2000), 529 U.S. 362, 413. "[E]rrors that undermine confidence in the fundamental fairness of the state adjudication certainly justify the issuance of the federal writ." *Williams v. Taylor*, 529 U.S. at 375.

Here, it is blatant and obvious that the state appellate court unreasonably determined the facts and/or ruled contrary to or unreasonably applied *Strickland* in failing to find that appellate counsel's failures satisfy the requisite levels of deficiency and prejudice. Appellate counsel was "objectively reasonable" in her failure to raise the *Brady* claim that would have raised a reasonable probability of reversal on appeal if not unreasonably omitted. *Smith I* at 226-228. As a result, her performance has been deemed ineffective per *Strickland* according to the Sixth Circuit. *Smith I* at 229.

Because appellate counsel's performance here already is deemed by the Sixth Circuit to be constitutionally ineffective and "objectively unreasonable" per *Strickland,* a state appellate court cannot reasonably or fair-mindedly conclude, as the First District did here, that appellate counsel's performance is anything more than "objectively unreasonable," or that it is constitutionally passable by any standard.

A state court cannot reasonably or fair-mindedly sanction an attorney's "objectively unreasonable" failure to raise a "significant and obvious" *Brady* claim that, if raised, would have raised a reasonable probability of reversal on appeal and involves evidence, which if presented to a jury, would result in a reasonable probability of acquittal. *Smith I* at 226-229.

In light of the Sixth Circuit's determinations, of course the state appellate court was objectively unreasonable in its application of *Strickland* to determine that "no genuine issue" as to an IAAC claim was raised in Smith's first Rule 26(B) Application. And confidence in the fundamental fairness of the First District's decision, which upheld this unconstitutional, case-altering failure, has been undermined in full.

Reviewing the specifics of appellate counsel's performance, the Sixth Circuit determined without qualification that the *Brady* claim was "significant and obvious," "the strongest argument for reversal of Smith's conviction" "clearly stronger" than the other arguments for reversal submitted by appellate counsel, "preserved" and "fully litigated in front of the trial court," and most importantly that it was "objectively unreasonable" for appellate counsel to fail to raise the *Brady* claim." *Smith I* at 226.

Concerning the resulting prejudice, the Sixth Circuit already determined that "there is a reasonable probability that Smith's conviction would have been

reversed had appellate counsel raised the *Brady* claim." *Smith I* at 229.

But beyond these crucial findings in Smith's favor and the Sixth Circuit's determination that IAAC under *Strickland* occurred, there are additional factors that demonstrate that the First District unreasonably determined the facts and/or ruled contrary to or unreasonably applied *Strickland* in failing to find IAAC. The *Brady* claim was obvious, strong in its own right, the strongest claim to raise on appeal, fully litigated in the trial court so as to put appellate counsel on notice, and would have resulted in a "reasonable probability of acquittal" if raised. *Smith I* at 226-229. Dr. Heinig specifically testified that the lab notes were necessary to give meaning to the DNA test results. *Smith I* at 214, 228. Based on the lab notes—and "only by reviewing the lab notes"—it was revealed **for the first time**[4]

---

[4] When dismissing the lab notes' materiality, *Smith II* incorrectly states that the defense theory (that Allen wore the costume to commit the robbery) was already before the trial court via DNA test results and expert testimony provided during trial. 2022 WL 601860, *6. *Smith II*'s mischaracterization of the DNA evidence and expert testimony available at trial is precisely what *Smith I* cut through when it explained that the lab notes were not merely cumulative to the DNA evidence presented at trial and that they "directly undermined" the trial court's basis for convicting Smith. Without the lab notes, the DNA test results equally corroborated both the State's and Smith's theories of the case. But the lab notes turned the State's theory upside down. With the aid of the lab notes post-trial—and only through an expert reviewing the lab notes—Smith, for the first time, could present DNA evidence that actually demonstrated his theory of the case and "directly undermined" the State's theory, which the state trial court adopted to convict Smith. At trial, Smith could not refute the State's theory—that Allen's DNA could be accounted for on the costume based on brief touching—because at that point, the State continued to suppress the lab notes despite the defense's specific requests. But when he finally obtained the lab notes post-trial, Smith, for the first time, had

that the saturation of Allen's DNA on the wig "is consistent with Allen wearing and not briefly touching" it. *Smith I* at 228-229. No reasonable strategy could justify omitting the *Brady* claim from the appeal. The Sixth Circuit found that the **trial court changed its theory of conviction based on the *Brady* evidence to a theory unsupported by any evidence, contradicted by all of the evidence, and which could not be lawfully sustained by a properly instructed jury**. *Smith I* at 228-229. Additionally, the trial court applied the wrong "materiality" and "reasonable probability" standards from *Brady* thus creating a strong appellate claim. *Smith I* at 227-228.

It is axiomatic that a conviction cannot stand when undisputedly undisclosed evidence causes the trial court to change its theory of conviction to an entirely unproven, contradicted one, and to admit that the undisclosed evidence might change the outcome at a jury trial as opposed to the trial judge's own consideration. It is equally obvious that a conviction cannot stand without the requisite proof in the record. Yet, these are the outcomes of the state's *Brady* violation. The trial court both allowed and created these outcomes. Appellate counsel failed to even raise the *Brady* claim. Accordingly, the *Brady* claim was

---

DNA evidence to undermine the State's DNA theory. Having actual evidence to contradict the State's and trial court's theory of conviction is poles apart from merely arguing that Allen wore the costume but without any evidence to actually demonstrate that the DNA test results corroborated Smith's theory and undermined the State's theory.

likely to result in reversal if raised by appellate counsel. Even so, the state appellate court rejected Smith's IAAC claim.

Because appellate counsel's performance was "objectively unreasonable," according to the Sixth Circuit, *Smith I* at 226, and prejudicial in that it failed to raise a claim for which would have raised a reasonable probability of reversal, *Id.* at 229, the First District unreasonably determined the facts or ruled contrary to or unreasonably applied *Strickland* when it rejected Smith's IAAC claim as meritless.

For these reasons, Smith's IAAC claim warrants relief, which would constitute the state appellate court reopening Smith's direct appeal to address the *Brady* claim on the merits for the first time.[5]

## A. Consideration of the state appellate court's "abuse of discretion" language.

When reviewing the state appellate court decision denying Smith's Rule 26(A) Application to Reopen Appeal, *Smith II* ignored the crucial "abuse of discretion" language used by the state appellate court, which shows that the state

---

[5] If this Court were to issue a writ of habeas corpus based on Smith's IAAC claim, the remedy would be for the state appellate court to reopen Smith's direct appeal to review this error **for the first time**, notwithstanding the *Smith II* Court's decision that the *Brady* claim was adjudicated on the merits. As explained *infra*, the law of the case from *Smith I* and Sixth Circuit precedent led to an opposite conclusion to that of *Smith II* on this point. Thus, using the older decision on point per *Trimble v. Bobby*, 804 F.3d 767, 777 (6th Cir. 2015), Smith's *Brady* claim was procedurally defaulted and was never addressed on the merits by the state appellate court. Thus, if Smith's direct appeal were reopened as the remedy for a writ of habeas corpus based on IAAC, the state appellate court's review of the *Brady* claim in the reopened appeal would constitute its first merits review of the claim.

appellate court's analysis of the IAAC claim was contrary to or involved an unreasonable application of *Strickland* (and *Brady*)[6], and was based on an unreasonable determination of the facts.

When applying the abuse of discretion standard, the appellate court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med.Bd.* (1993), 66 Ohio St.3d 619, 621. Thus, the state appellate court had to review the specific reasons **why** the state trial court rejected Smith's *Brady* claim and affirmed his convictions in order to determine whether the trial court's reasoning was "unreasonable, arbitrary, or unconscionable." *State v. Adams* (1980), 62 Ohio St.2d 151, 157. If the trial court abused its discretion, the state appellate court was bound to reverse the trial court and ***not*** substitute its own judgment for that of the trial court. Accordingly, in applying AEDPA deference to the state appellate court's statements about *Brady*, *Smith II* needed to review the state trial court's **reasoning** about *Brady* because that is the reasoning to which the state appellate court deferred in applying abuse of discretion.

Accordingly, when this Court applies AEDPA deference to the state appellate court's analysis of the IAAC claim, it should consider the "abuse of discretion" language. This Court held that the state trial court unreasonably

---

[6] As explained *infra* in Section III(A), the law of the case from *Smith I* and Sixth Circuit precedent lead to an opposite conclusion to that of *Smith II* concerning whether Smith's *Brady* claim was adjudicated on the merits by the state appellate court when it rejected Smith's Rule 26(B) Application to Reopen Appeal.

determined the facts **by relying on purported evidence not in the record** to explain away the significance of the *Brady* DNA evidence and affirm Smith's convictions despite the lack of any evidence as to why Allen's DNA was on the robber's wig and sunglasses other than to wear them while committing the robbery in question or any evidence that Smith acted as an accomplice. Doc.125;PageID#3373, 3374 (Decision Granting Habeas Writ).

*Smith I* **made these same findings concerning the absence of any such evidence in the record,** *Smith I* at 226, 228-29, rendering the "unreasonable determination of the facts" ground for relief insulated from reversal in light of the law-of-the-case, had *Smith II* considered the "abuse of discretion" language.

The holding by the state appellate court that the trial court did not abuse its discretion is flatly incorrect—even under AEPDA review—because the state trial court *did in fact* abuse its discretion in the following three ways that the state appellate court *necessarily* rubber-stamped by holding that the trial court had *not* abused its discretion:

> (1) the state trial court's unreasonable and contrary application of the *Brady* materiality standard (applying a subjective rather than objective materiality standard)—which *Smith I* **already determined to be a misapplication of the *Brady* standard.** *Smith I* at 228 ("To the extent that the court's comments can be taken as a statement of its reasons for denying the motion, *it likely abused its discretion by misapprehending and misapplying Supreme Court precedent"*);
>
> (2) its unreasonable determination of facts in upholding Smith's convictions based on an accomplice/"involved"-in-some-way theory—which *Smith I*

**already determined to be unsupported by any evidence in the record.** *See Smith I* at 228-229; and

(3) its unreasonable determination of facts that Allen's DNA can be accounted for on the robber's costume by wearing it on other occasions or to commit other robberies— **which *Smith I* already determined to be unsupported by any evidence in the record.** *See Smith I* at 215, 228-229.

Accordingly, the state appellate court's conclusion that the state trial court "did not abuse its discretion," and thus, that the undisclosed evidence was immaterial under *Brady*, is **directly contradicted by the record.** More critically, the state appellate court's statements about *Brady* ***necessarily*** are contrary to and "involve" an "unreasonable application" of *Brady*, and rest on unreasonable factual determinations for the three reasons enumerated above. These three reasons all constitute law-of-the-case from *Smith I* and demonstrate that the state trial court ***did in fact abuse its discretion*** even under AEDPA deference.

For this additional reason, this Court should issue a writ based on Smith's IAAC claim. After all, appellate counsel failed to raise the *Brady* issue despite that the trial court applied the wrong standard and relied on purported facts not in the record to overrule the claim. Then, the state appellate court rubber-stamped the trial court's use the wrong standard for evaluating the *Brady* claim and its use of purported facts not in the record. ***Appellate counsel's role in this instance was all the more crucial***—to point out that the trial court was basing its analysis on the wrong *Brady* standard and on conjectures beyond the record. Yet, because of

appellate counsel's failures, these issues were never even presented to the state appellate court.

When given the chance to review appellate counsel's performance, the state appellate court nevertheless condoned appellate counsel's representation of Smith in part on the basis that the trial court never abused its discretion concerning Smith's *Brady* evidence. Yet, *Smith I* directs otherwise on the basis of the three points enumerated above.

## III. Other considerations on remand.

### A. An additional conflict exists between *Smith I* and *Smith II* concerning to which state court decision, if any, AEDPA deference applied. Based on the law of the case, the *Trimble v. Bobby* older-decision-resolves-direct-conflicts doctrine, and longstanding Sixth Circuit precedent, the state appellate court's brief statement about Smith's *Brady* claim in its decision rejecting the Rule 26(B) Application to Reopen Appeal does not warrant AEDPA deference.

*Smith II* deviated from the law of the case in *Smith I* concerning to which state court decision, if any, AEDPA deference applied, as well as Sixth Circuit precedent concerning when an underlying claim in a timely but denied Rule 26(B) Application to Reopen Appeal is considered adjudicated on the merits. The *Smith II* decision currently stands, but to the extent the contradictions between *Smith I* and *Smith II* impact this Court's analysis of the IAAC issue, conflicts should be resolved in favor of *Smith I* per the law of the case doctrine and the *Trimble v. Bobby* older-decision-resolves-direct-conflicts doctrine for the following reasons.

22

The Sixth Circuit has **never found**—until *Smith II*—that a claim underlying the ineffective assistance of appellate counsel ("IAAC") claim in a timely but denied Rule 26(B) Application to Reopen Appeal is **both:** (1) procedurally defaulted/not revived by the application; **and** (2) adjudicated on the merits. The *Smith II* decision is an aberration from Sixth Circuit case law and a contradiction of *Smith I*'s implicit determination[7] to which this Court is bound per the law of the case doctrine, and to which *Smith II* was bound.

Sixth Circuit precedent holds that when a state appellate court in Ohio rejects a Rule 26(B) Application to Reopen Appeal on the basis of IAAC, a federal court can find that the claim underlying the IAAC claim was adjudicated on the merits. **But it cannot also, at the same time,** find that the underlying claim was procedurally defaulted and not revived by its inclusion in the Rule 26(B) Application.

Indeed, whether a claim is adjudicated on the merits for purposes of AEDPA deference is analytically distinct from whether the claim is procedurally defaulted, and thus, ineligible for a federal merits review notwithstanding the application of cause and prejudice or other exception. Even so, **every time** the Sixth Circuit has

---

[7] The law of the case doctrine precludes a court from reconsideration of issues "decided at an early stage of the litigation, either explicitly *or by necessary inference* from the disposition." *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997) (quoting *Coal Res., Inc. v. Gulf & Western Indus., Inc.*, 865 F.2d 761, 766 (6th Cir. 1989)) (emphasis added).

found that a state appellate court's statements about the claim underlying IAAC constitute an adjudication of the merits, it has ***also* specifically found** that the claim was ***not* procedurally defaulted.** *See James v. Brigano*, 470 F.3d, 636, 641 (6th Cir. 2006); *Patterson v. Haskins*, 316 F.3d 596, 605, 608 (6th Cir. 2003); *Winston v. Brunsman*, 566 Fed.Appx. 422, 423-25 (6th Cir. 2014) (per curiam).

At the same time, this Court never has deviated from finding that a Rule 26(B) Application fails to revive the claim underlying IAAC from being procedurally defaulted. *See Davie v. Mitchell*, 547 F.3d 297 (6th Cir. 2008); *Wogenstahl v. Mitchell*, 668 F.3d 307 (6th Cir. 2012).

The starting point from *Smith I* is that: (1) Smith's *Brady* claim was procedurally defaulted despite its inclusion in a timely Rule 26(B) Application; and (2) IAAC established cause and prejudice to excuse the procedural default and allow the district court to adjudicate the *Brady* claim on the merits.

By virtue of *Smith I* finding that Smith's *Brady* claim was procedurally defaulted despite inclusion in the timely Rule 26(B) Application, the Sixth Circuit already implicitly found that the state appellate court **did not** adjudicate Smith's *Brady* claim on the merits. Doing so would have meant that the state appellate court did not apply the procedural bar that Rule 26(B) creates, which excludes claims underlying the IAAC claim from consideration on the merits. Here, it is plain to see that the state appellate court **did** invoke the Rule 26(B) procedural bar

against Smith's *Brady* claim, because the state appellate court's decision on Smith's direct appeal was never vacated, and his direct appeal was never reopened to include the *Brady* claim.

*Smith II* was not free to contradict the *Smith I* finding that the state appellate court did not adjudicate Smith's *Brady* claim on the merits. *Smith II* was free to determine only either: (1) the *Brady* claim was not adjudicated on the merits (as Magistrate Judge Merz recommended in the November 7, 2019 Report & Recommendations (Doc. 115)); or (2) the state trial court adjudicated the *Brady* claim on the merits, entitling the state trial court decision—not the state appellate court decision—to AEDPA deference (as the District Court ultimately held, Doc. 125, Decision Granting Habeas Writ).

To the extent the contradictions between *Smith I* and *Smith II* impact this Court's analysis of the IAAC issue, conflicts should be resolved in favor of *Smith I* per the law of the case doctrine, that this issue was remanded by *Smith I* in 2019 after making specific findings and determinations about the IAAC claim, and the *Trimble v. Bobby* older-decision-resolves-direct-conflicts doctrine. Specifically, the *Smith I* findings concerning the facts and what evidence exists in the record, the elements of the IAAC claim, and the elements of the *Brady* claim bind this Court and establish the starting point for this Court's IAAC analysis.

**B. This Court should reissue the portion of its decision granting Smith's writ of habeas corpus based on the state court's unreasonable factual determinations because the Sixth Circuit never affirmed or reversed the writ on this basis, and the Sixth Circuit ignored the crucial "abuse of discretion" language, which should have guided its review of the state appellate court's statement about Smith's *Brady* claim.**

The mandate rule permits a lower court to consider questions that the superior court left unanswered. *See U.S. v. Ayers*, 759 F.Supp.2d 945, 948-949 (S.D.Ohio; December 22, 2010). Because this Court issued a writ of habeas corpus on the basis of an unreasonable determination of facts by the state trial court, and the Sixth Circuit in *Smith II* neither affirmed nor reversed this basis, this Court should reissue that portion of the writ.

Additionally, the Sixth Circuit has explained that the mandate rule involves a modicum of flexibility for a lower court to work within when there is a clearly erroneous decision. *See U.S. v. Ayers*, 759 F.Supp.2d at 948-949 at Footnote 1 citing *Petition of United States Steel Corp.,* 479 F.2d 489, 494 (6th Cir. 1973).

Here, the Sixth Circuit clearly erred in failing to affirm or reverse the writ on the basis of the district court's finding of an unreasonable determination of facts, and the Sixth Circuit clearly erred in failing to consider the crucial "abuse of discretion" language in its analysis of the state appellate court's statement concerning Smith's *Brady* claim.

*Smith II* failed to review this Court's ground for granting Smith's writ based on an unreasonable determination of the facts by the state trial court for its reliance

on purported evidence absent from the record. In looking at the state appellate court as the last state court adjudication on the merits, which it should not have per Section III(A) *supra*, *Smith II* ignored crucial language that the Sixth Circuit in *Smith II* was required to evaluate, and which showed that the state appellate court's analysis was contrary to or involved an unreasonable application of *Brady*, and was based on an unreasonable determination of the facts.

As previously explained *supra* in Section II(A), in applying AEDPA deference to the state appellate court's decision, *Smith II* **completely ignored** the state appellate court's statement that the state trial court **"did not abuse its discretion,"** jumping only to the court's conclusory, one-sentence explanation as to *why* the trial court should be upheld. Doc.75;PageID#2634.

But crucially, failing to consider the state appellate court's determination that the trial court had not abused its discretion resulted in *Smith II* overlooking one of this Court's grounds for granting Smith's writ—that **the state trial court unreasonably determined the facts.** This Court held that the state trial court unreasonably determined the facts **by relying on purported evidence not in the record** to explain away the significance of the *Brady* DNA evidence and affirm Smith's convictions despite the lack of any evidence as to why Allen's DNA was on the robber's wig and sunglasses other than to wear them while committing the robbery in question or any evidence that Smith acted as an accomplice.

Doc.125;PageID#3373, 3374.

*Smith I* addressed the IAAC issue and also found that many of the State's arguments to date (and the state court rulings) were based on evidence outside the record. These findings led this Court, on remand, to correctly find that the state trial court had unreasonably determined the facts. ***Smith I* made these same findings concerning the absence of any such evidence in the record,** *Smith I* at 226, 228-29, rendering this ground for relief insulated from reversal in light of the law-of-the-case, had *Smith II* considered the "abuse of discretion" language. The panel in *Smith II* did not overturn these findings, and thus, the rulings in *Smith I* continue to control per the law of the case doctrine.

The holding by the state appellate court that the trial court did not abuse its discretion is flatly incorrect—even under AEPDA review—because the state trial court ***did in fact*** abuse its discretion in the following three ways:

> (1) the state trial court's unreasonable and contrary application of the *Brady* materiality standard (applying a subjective rather than objective materiality standard)—which ***Smith I* already determined to be a misapplication of the *Brady* standard.** *Smith I* at 228 ("To the extent that the court's comments can be taken as a statement of its reasons for denying the motion, *it likely abused its discretion by misapprehending and misapplying Supreme Court precedent");*
>
> (2) its unreasonable determination of facts in upholding Smith's convictions based on an accomplice/"involved"-in-some-way theory—which ***Smith I* already determined to be unsupported by any evidence in the record.** *See Smith I* at 228-229; and
>
> (3) its unreasonable determination of facts that Allen's DNA can be

accounted for on the robber's costume by wearing it on other occasions or to commit other robberies— **which *Smith I* already determined to be unsupported by any evidence in the record.** *See Smith I* at 215, 228-229.

When it held that the state trial court had not abused its discretion, the state appellate court ***necessarily*** rubber-stamped these three determinations by the state trial court, all three of which the Sixth Circuit in *Smith I* found to be unsupported by any evidence in the record or contrary to or an unreasonable application of Supreme Court precedent.

Accordingly, the state appellate court's conclusion that the state trial court "did not abuse its discretion," and thus, that the undisclosed evidence was immaterial under *Brady*, is **directly contradicted by the record.** More critically, the state appellate court's statements about *Brady **necessarily*** are contrary to and "involve" an "unreasonable application" of *Brady*, and rest on unreasonable factual determinations for the three reasons enumerated above.

These three reasons all constitute law-of-the-case from *Smith I*, demonstrate that the state trial court ***did in fact abuse its discretion*** even under AEDPA deference, and require the Sixth Circuit to **uphold** Smith's writ on the basis of the state courts' unreasonable application of *Brady* and its unreasonable determination of facts as already determined by *Smith I*.

The Sixth Circuit in *Smith II* reached a different conclusion as to the *Brady* claim, but it has not affirmed or reversed Smith's writ on the basis of the

unreasonable determination of facts based on the use of purported evidence not in the record.

The mandate rule permits a lower court to consider questions that the superior court left unanswered. *See U.S. v. Ayers*, 759 F.Supp.2d 945, 948-949 (S.D.Ohio; December 22, 2010). Because this Court issued a writ on this basis and the Sixth Circuit neither affirmed nor reversed it, this Court should reissue that portion of the writ.

**C. When faced with contradictions between *Smith I* and *Smith II*, this Court should turn to *Smith I* for guidance based on the law of the case doctrine, the *Trimble v. Bobby* older-decision-resolves-direct-conflicts doctrine, and the fact that the IAAC issue was remanded by *Smith I* wherein the Sixth Circuit made specific and emphatic findings on the issue which still stand.**

It is evident that *Smith I* and *Smith II* are contradictory beyond differences attributed to *Smith I* applying *de novo* review to the *Brady* claim and *Smith II* applying AEDPA deference.  To the extent contradictions between *Smith I* and *Smith II* concerning the facts and what evidence exists in the record impacts this Court's IAAC analysis, this Court must follow *Smith I* according to the *Trimble v. Bobby* older-decision-resolves-direct-conflicts doctrine, the law of the case doctrine, and the fact that the IAAC issue was remanded by *Smith I*, wherein the Sixth Circuit made specific and emphatic findings about the issue that still stand.

Significant factual contradictions exist between *Smith I* and *Smith II*.  *Smith I* specifically established as **factually wrong** certain allegations often advanced by

the State throughout the fourteen years of litigation in this case to debunk the significance of Smith's *Brady* evidence.

Most prominently, throughout the years, the State attempted to undercut the significance of the *Brady* DNA evidence by claiming that it failed to provide any "new" or "contradictory" evidence and instead only provided "cumulative" evidence to what was already known at trial. Similarly, the State also routinely touted another red-herring—that Smith's expert could not pinpoint when Allen deposited his DNA on the wig. Thus, the State advanced the false argument that the DNA evidence was meaningless because Allen could have deposited his DNA on the wig at any time, not necessarily during the robbery.[8]

---

[8] Heinig explained that without the undisclosed lab notes, a factfinder could conclude that the DNA results known at trial were consistent with Allen merely touching the wig. *Smith I* at 228-29. However, the saturation of Allen's DNA on the wig—as revealed post-trial for the first time and "only by reviewing the DNA lab notes"—"is consistent with Allen wearing and not briefly touching" it. *Id.* Heinig's commercial lab re-tested the sunglasses and wig and found Allen's DNA heavily present on the sunglasses consistent with Allen wearing rather than incidentally touching them. Once again, she found heavy saturation on the wig. *Id.* This time, Allen's DNA was present at all loci tested. *Smith I* at 214.

Also once again, Smith's DNA was not present on the wig, sunglasses, or t-shirt. *Id.* Heinig's testimony, which went unrefuted at the post-conviction hearing, contradicted the State's entire theory of the case—as determined by *Smith I*. *Id.* at 228. Without the lab notes, the State at trial was able to portray the presence of Allen's DNA on the items as the result of brief touching. *Id.* at 228-29. Heinig's postconviction testimony, however, demonstrated that the amount of Allen's DNA on all pieces of the robber's costume was actually consistent with heavy, prolonged contact, like wearing the items during the robbery—not with brief touching. *Id.* at 214-215, 228.

Significantly, the Sixth Circuit in *Smith I* established these claims as **factually wrong based on the record.** Yet, *Smith II* readopted them despite that the actual facts in the record do not change regardless of the standard of review. The *Smith I* Court reviewed the *Brady* claim using a *de novo* standard of review whereas the *Smith II* Court applied AEDPA deference. Nonetheless, the actual facts in the record do not change, and if a Court or any individual were to parse the record, only one conclusion could be reached—that the *Smith II* Court's factual basis for its *Brady* analysis is clearly erroneous based on its reliance on purported facts that appear **nowhere in the record.**

In contrast, after a decade of the State misleading the courts by referring to evidence that appears nowhere in the record, and misconstruing the undisclosed lab notes as "merely cumulative," *Smith I* once and for all rejected the State's spin on the *Brady* evidence and concluded four immutable points concerning what evidence exists in the record and the accurate meaning of the undisclosed DNA evidence. **These points do not change with the standard of review:**

> (1) the State's entire trial theory from the indictment to closing argument was that Smith was the costume-wearing gunman, Allen was the driver, and that Allen's DNA could be accounted for on the wig by briefly touching it to hand it to Smith to wear or by wearing it on other occasions. The State never gave an explanation to account for Allen's DNA on the sunglasses. *Smith I* at 228-29.

> (2) the State presented **"no evidence"** that Allen wore the wig or sunglasses on other occasions, and to the contrary, the **State presented only the opposite**—that Allen *did not* wear or even see the wig/sunglasses during the

robbery or other occasion. *Smith I* at 214-15, 228-29. *Compare with Smith II* concluding the opposite that, "The DNA lab notes do not pin down when Allen might have worn the wig" 2022 WL 601860, *6. Yet, the State at trial remained consistent that Allen never wore or was even suspected of wearing the robber's costume. In addition to Allen's testimony, *see e.g.* Doc.12-4;PageID#901. (In discussing the costumed-perpetrator, Det. Heine testifies that Allen was never considered a suspect).

(3) the *Brady* DNA evidence ***"directly undermined"* the fact-finder's theory of guilt** by contradicting the State's theory outlined in Paragraph (1) above and (adopted the state trial court) with unrefuted evidence that Allen **wore** the wig and sunglasses, which, per Paragraph (2) above could have taken place *only* during the robbery. This "direct undermining" of evidence was made possible **"only by reviewing the *Brady* DNA evidence."** *Smith I* at 228-29. *Compare with Smith II* concluding the opposite that "instead of *contradicting* the evidence at trial, the [undisclosed lab notes] simply *elaborate upon* information the State already provided... Neither the DNA test results nor the lab notes "directly contradict" Moore's eyewitness testimony. 2022 WL 601860, *6; and

(4) **"no evidence"** in the record supported the notion that Smith was Allen's accomplice, and thus his convictions could **not lawfully be sustained on an alternate aiding-and-abetting theor**y. *Smith I* at 226, 228-29. *Compare with Smith II* mischaracterizing Smith's theory as alleging that Allen acted "alone" in committing the robbery. *Smith v. Warden, Toledo Correctional*, 2022 WL 601860, *6 (6th Cir.; March 1, 2022) ("*Smith II*"). *Smith I* once and for all clarified that the State's failure to present any evidence that Smith acted as an accomplice was crucial to the constitutionality of his convictions given the materiality of the *Brady* evidence undermining the basis of conviction.[9] Along these lines, Smith never asserted that Allen acted alone

---

[9] The mischaracterization of Smith's theory by *Smith II* is important because the State often mischaracterized Smith's theory in the same way in efforts to jab Smith's arguments as "absurd," because it is obvious that Allen had an accomplice. The subtext of the State, and now *Smith II*, mischaracterizing Smith's theory in this way is the suggestion that an aiding-and-abetting theory is a viable means to sustain Smith's conviction. But, again, this Court in *Smith I* cut through this mischaracterization and affirmatively recognized that **the record is devoid of any evidence that Smith acted as an accomplice**, thus, Smith's convictions could not be lawfully upheld on an aiding-and-abetting theory. *Smith I* at 226, 228-229.

in committing the robbery as the *Smith II* mischaracterizes his theory. Smith has always asserted that Allen committed the robbery with an unknown accomplice, possibly the contributor to the partial DNA profile on the wig. *Id.* at 228.[10]

*Smith II*, however, largely ignored the rulings of *Smith I*, and under the guise of AEDPA deference, went back to adopting the State's debunked and incorrect arguments. This allowed *Smith II* to label the lab notes as unimportant, merely cumulative to evidence known at trial, and not contradictory to the State's trial theory.

As a result, *Smith II* concluded that the *Brady* DNA evidence did not even contradict the only eyewitness (Moore) who claimed he saw Smith wear the items. *Smith II* reasoned that Allen's DNA theoretically could have been deposited on the costume **at *any* time, not necessarily during the robbery.** 2022 WL 601860, *6.

---

Understanding this point in connection with *Smith II*'s mischaracterization of Smith's theory of the case is crucial because it demonstrates that *Smith II* missed this hole in the State's evidence, and thus did not understand why the *Brady* DNA evidence—establishing that Allen wore the costume and could have done so only during the robbery due to the State's lack of any other evidence—**is material irrespective of standard of review.**

[10] Smith presented several jail phone line recordings that further inculpated Allen as the robber and corroborated the lab notes. Though Smith attempted to learn information about Allen's accomplice(s) in one of these jail phone line recordings, the identity of the accomplice(s) ultimately has never been consequential to the federal litigation. Doc.12-8;PageID#1305-1309. *See also* Def.Ex.18A-B; 19A-B; 20A-B; 21A-B (recordings). Allen, however, was undisputedly recorded on one of these jail phone line recordings complaining about being caught on a hidden recording talking in first-person about committing the instant robbery. *Smith I* at 213-14.

But this, too, is flatly contradicted by *Smith I*. *Smith I* concluded that Allen's DNA could **only** be innocently accounted for on the **black t-shirt** (Smith *I* at 214, 215), and that the State not only presented **"no evidence"** that Allen wore the wig or sunglasses on other occasions, but to the contrary, the State presented **only the opposite—that** Allen ***did not*** wear or even see the wig/sunglasses during the robbery or other occasion; that Allen was the driver; and that Smith was the costume-wearing gunman, not an accomplice. *See Smith I* at 214, 215, 226, 228-229.

## CONCLUSION

*Smith II* did not overturn *Smith I*'s determinations about the IAAC claim or its clarifications about the facts and what evidence exists in the record. This Court must follow the determinations already made by the Sixth Circuit in *Smith I* concerning the IAAC claim. And to the extent *Smith I* and *Smith II* differ and contradict one another as to the facts and what evidence exists in the record, and to the extent these contradictions impact this Court's IAAC analysis, this Court must follow *Smith I* according to the Sixth Circuit in *Trimble v. Bobby* and the law of the case doctrine.

For all the foregoing reasons, this Court should reissue Petitioner Christopher Smith's Unconditional Writ of Habeas Corpus on the basis of the state court's unreasonable determination of the facts and grant his Writ based on the

IAAC claim.  Retrial should be barred on the basis of the reasons presented in

*Smith v. Warden, Correctional Toledo Correctional Institution,* Sixth Circuit Case

No. 20-3496.  Because the former basis for issuing a writ provides greater relief, a

remand to state court to reopen the direct state appeal will not be necessary if the

former basis for relief is granted.

Respectfully submitted,

/s/Michele L. Berry
The Law Office of Michele L. Berry, LLC
Michele L. Berry (0081939)
3584 Mooney Ave.
Cincinnati, Ohio 45208
Tel: 513.919.5315
mberrylaw2007@gmail.com
*Counsel for Petitioner Christopher Smith*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing *Petitioner's Brief on Remand* has been served upon the Respondent through the court's electronic filing system this 2nd day of May, 2022.

/s/Michele L. Berry
Michele L. Berry (0081939)