# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

CHRISTOPHER SMITH,

|  |  |  |  |
|---|---|---|---|
| | Petitioner, | : | Case No. 1:12-cv-425 |
| - vs - | | | District Judge Timothy S. Black |
| | | | Magistrate Judge Michael R. Merz |
| WARDEN, Toledo Correctional Institution, | | | |
| | | : | |
| | Respondent. | | |

# REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on remand from the United States Court of Appeals for the Sixth Circuit. *Smith v. Warden*, Case Nos. 20-3472, 20-3496, 2022 WL 601860 (6th Cir. Mar. 1, 2022)(unpublished; copy at ECF No. 171)("*Smith II*")(Sutton, C.J., with Siler & Readler)[1].

On a prior remand (*Smith v. Warden*, 780 F. App'x 208, 231 (6th Cir. 2019)("*Smith I*")(Stranch, J, with Norris & Siler) this Court had granted an unconditional writ of habeas corpus on Smith's claim that the State violated his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by not disclosing the DNA testing notes of Dr. Heinig, a DNA analyst (ECF No. 125). In *Smith II*, the circuit court reversed that conclusion, holding that the Ohio First District Court of Appeals decision on the *Brady* claim was neither contrary to nor an objectively

---

[1] No Fed. Appx. citation is given for *Smith II* because the West Publishing Company has ceased publication of that series.

unreasonable application of Supreme Court precedent and was therefore entitled to deference under AEDPA.  *Smith II* at *6[2].

However, the circuit court also noted

> The district court did not consider the freestanding ineffective assistance claim after it granted a writ of habeas corpus on the *Brady* claim. Both parties request a remand to the district court to consider the ineffective assistance claim in the first instance. As a "court of review, not first view," we remand to the district court to consider the claim in the first instance. *United States v. Houston*, 792 F.3d 663, 669 (6th Cir. 2015).

*Smith* at *7.

Following remand, each party has filed additional briefing (Respondent's Brief, ECF No. 176; Petitioner's Brief, ECF No. 177), making the remanded claim ripe for decision.

Respondent argues this Court has little work to do on remand.  The Warden reasons that because *Smith II* held the Ohio Court of Appeals reasonably applied *Brady v. Maryland*, 373 U.S. 83 (1963), in denying Smith's Ohio R. App. P. 26(B) Application, *a fortiori* there was no prejudice in failing to raise that claim and without prejudice there can be no violation of the ineffective assistance of counsel standard of *Strickland v. Washington,* 466 U.S. 668 (1984).

Petitioner, however, contends that under the law of the case doctrine, *Smith I* rather than *Smith II* is controlling, and this Court should re-issue the unconditional writ because the state court's factual determinations were unreasonable.

Petitioner opens his Brief with a rhetorical appeal to his purported innocence of the underlying crime:  "As recently as January 14, 2022, Smith was offered a deal for time-served—thereby closing the case and ending the threat of returning to prison—in exchange for a guilty

---

[2] "The Ohio Court of Appeals did not unreasonably apply clearly established federal law as determined by the U.S. Supreme Court."

2

plea. Smith rejected that offer on the basis of his innocence." (ECF No. 177, PageID 3688). Counsel offers no record reference to any such offer and the Court cannot consider counsel's statement as evidence because it is extra-record. *Cullen v. Pinholster,* 563 U.S. 170 (2011).

**Law of the Case Doctrine**

Smith argues that under the law of the case doctrine, this Court must follow *Smith I* rather than *Smith II.* (Petitioner's Brief, ECF No. 177, PageID 3695, citing *Scott v. Churchill,* 377 F.3d 565, 569-70 (6th Cir. 2004); *United States v. Todd,* 920 F.2d 399, 403 (6th Cir. 1990); *Edmonds v. Smith,* 922 F.3d 737, 739 (6th Cir. 2019); "Wright & Miller §3867 Law of the Case for Remand"; and the undersigned's prior Report and Recommendations in this case (ECF No. 115; PageID 3291-94)).

The Wright & Miller citation is inapposite as that section of the treatise deals only with multi-district litigation. In *Edmunds*, the court declined to apply law of the case doctrine across two habeas (§ 2255) cases arising out of the same conviction. *Edmunds* is also inapposite to our situation here.

In *Scott* the Sixth Circuit was considering the application of law of the case doctrine on a second appeal, the situation in this case. Judge Moore wrote for the Court:

> The law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California, *570* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). However, the doctrine merely "directs a court's discretion, it does not limit the tribunal's power." *Id.; see also Gillig v. Advanced Cardiovascular Sys., Inc.,* 67 F.3d 586, 589–90 (6th Cir.1995). "In essence, the mandate rule is a specific

3

> application of the law-of-the-case doctrine." *United States v. Campbell,* 168 F.3d 263, 265 (6th Cir.1999). "The basic tenet of the mandate rule is that a district court is bound to the scope of the remand issued by the court of appeals." *Id.* The scope of a remand is determined by examining the entire order or opinion, to determine whether and how the court of appeals intended to limit a remand. *Id. at* 266–68. In the instant case, our opinion in *Scott I* had already determined that Scott's retaliation claim against Bair could survive summary judgment under the *Thaddeus–X* standard; had the panel of our court meant in *Scott II* to hold that the *Thaddeus–X* standard was the appropriate one to be used in gauging qualified immunity, our panel presumably would have remanded with instructions to deny Bair's motion and proceed to trial. Instead, the opinion as a whole makes clear that the district court is to reconsider Bair's motion "[i]n light of *Bell.*" *Scott II,* 55 Fed.Appx. 268. "The issue presented by Scott [the appellant in *Scott II* ], and resolved in *Bell,* is the applicability of the 'shocks the conscience' standard to prisoner First Amendment retaliation claims alleging conduct in 1995." *Id.* at 269. Given the discretionary nature of the law-of-the-case doctrine, the clear misstatement of *Bell's* holding by *Scott II,* and the failure of Bair's qualified immunity claim under *Bell's* actual holding, as detailed below, we decline to consider *Scott II's* statement as binding upon the district court below or on this court now.

*Scott*, 377 F.3d at 569–70. Applying *Scott* here, the circuit panel in *Smith II* was not bound by *Smith I* and neither is this Court; application of the mandate rule requires us to follow *Smith II* rather than *Smith I.*

Petitioner asserts that the law of the case doctrine as set forth in *Trimble v. Bobby*, 804 F.3d 767 (6th Cir. 2015), requires this Court to follow *Smith I* rather than *Smith II* (ECF No. 177, PageID 3698). In fact, Petitioner purports to quote *Trimble* as saying ["]Both rulings cannot be right, as they look in opposite directions. To resolve this Janus-like dilemma, we look to the oldest decision on point.[3]" The quotation cannot be accurate because the phrases "opposite

---

[3] The first quotation mark here is supplied by the undersigned; the second quotation mark appears in the text at PageID 3698. Counsel does not give the quotation mark that presumably should appear at the beginning of this sentence.

4

direction" and "Janus-like" do not appear anywhere in *Trimble*. In fact, Petitioner's heavy reliance on *Trimble* is puzzling because the opinion does not discuss law of the case doctrine at all.

The mandate rule is a specific application of the law-of-the-case doctrine. The basic tenet of the mandate rule is that a district court is bound to the scope of the remand issued by the court of appeals. *United States v. Campbell,* 168 F.3d 263, 265 (6th Cir. 1999). The mandate rule is a distinct concept which preserves the hierarchy of the court system. *Scott,* 377 F.3d at 570.

> Pursuant to the law of the case doctrine, and the complementary "mandate rule," upon remand the trial court is bound to "proceed in accordance with the mandate and law of the case as established by the appellate court." *Id.* (quoting *Petition of U.S. Steel Corp.*, 479 F.2d 489, 493 (6th Cir.), cert. denied, 414 U.S. 859, 94 S. Ct. 71, 38 L. Ed. 2d 110 (1973)). The trial court is required to "implement both the letter and the spirit" of the appellate court's mandate, "taking into account the appellate court's opinion and the circumstances it embraces." *Brunet v. City of Columbus*, 58 F.3d 251, 254 (6th Cir. 1995).

*Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006).

The remand in *Smith II* requires this Court to decide the free-standing ineffective assistance of appellate counsel claim we bypassed before the appeal, having decided it was moot because we granted more fulsome relief on the *Brady* claim than was available on the ineffective assistance of appellate counsel claim, to wit, a new trial as opposed to a new direct appeal.

The ineffective assistance of appellate counsel claim made in the Petition is

> **Ground Seven:** Appellate counsel rendered ineffective assistance in violation of Smith's Sixth Amendment right by failing to properly raise and exhaust the First, Second, Third, Fifth, and Sixth Grounds for Relief presented in this petition.

5

(Petition, ECF No. 1-1, PageID 50).  Only that portion of Ground Seven which claims ineffective assistance of appellate counsel for failure to raise the *Brady* claim remains viable (See ECF No. 115, PageID 3294).

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice.  *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), *citing Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra*; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id*., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The

> likelihood of a different result must be substantial, not just
> conceivable. *Id*., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter*, 562 U.S. 86, 111-112 (2011).

The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987). To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing Wilson v. Parker*, 515 U.S. 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id*., *citing Wilson.* If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id., citing Wilson.* The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005); see *Smith v. Murray*, 477 U.S. 527 (1986). "Only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of [appellate] counsel be overcome." *Dufresne v. Palmer*, 876 F.3d 248 (6th Cir. 2017), quoting *Fautenberry v. Mitchell*, 515 U.S. 614, 642 (6th Cir. 2008).

Failing to raise meritless claims is neither deficient nor prejudicial. *Moody v. United States,* 958 F.3d 485, 492 (6th Cir. 2020), citing *Bennett v. Brewer,* 940 F.3d 279, 286-87 (6th Cir. 2019); *Sutton v. Bell,* 645 F.3d 752, 755 (6th Cir. 2011). *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020) ("The failure to raise a meritless claim does not constitute ineffective assistance of counsel.").

As Respondent argues, the Sixth Circuit in *Smith II* determined the Court of Appeals decision of the *Brady* claim was entitled to AEDPA deference because it was a reasonable application of *Brady* and its progeny. *Smith II* at *7. That does not mean, however, that a different evaluation of the *Brady* claim would have been unreasonable. The analysis of the *Brady* claim announced by the Sixth Circuit in *Smith I* was also reasonable and would have been entitled to AEDPA deference if the Court of Appeals had come out differently. In other words, the *Brady* claim is arguable: it is not so plainly meritorious or meritless that "any damned fool[4]" could have accurately predicted the result. In those circumstances, the appellate attorney who chooses not to raise a particular assignment of error is entitled to a presumption that she or he provided effective assistance and Petitioner has not overcome that presumption.

**Conclusion**

The Magistrate Judge respectfully recommends the Seventh Ground for Relief be denied and the petition dismissed with prejudice. If Petitioner objects to this conclusion, he must include argument for a certificate of appealability in his objections or file a motion for certificate of

---

[4] Paul Freund, a noted constitutional scholar of the mid-20th century, used this phrase to describe Supreme Court opinions where the structure of the argument essentially accused the uncomprehending reader of stupidity. He memorably used the phrase to describe Chief Justice Warren's opinion in *Reynolds v. Sims*, 377 U.S. 533 (1964).

appealability at the same time.


January 18, 2024.


## NOTICE REGARDING OBJECTIONS


Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #


s/ *Michael R. Merz*
United States Magistrate Judge